## McMasters *versus* The Pennsylvania Railroad Co.

1. A custom so long persisted in as to be known and practised by a community, is the law of the particular business in which it exists; and the presumption arises that it is in the view of parties who contract about its subject-matter.

2. To establish such custom it should be reasonable, continued and acquiesced in by all acting within its operations.

3. There was a custom that a railroad company should deliver freight on the platform of *minor stations*, whose business would not justify a warehouse, &c., to be received there by the consignee on discharge from the car. *Held*, a good custom.

4. A custom will control the general law of liability of carriers.

5. To relieve a carrier, the custom must be clearly proved, and that the employer knew it, or is to be presumed to know it, by reason of its generality in the neighborhood.

6. Distinction between carriage by rail and by wagon or water-craft stated.

October 12th 1871. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Allegheny county :* No. 159, to October and November Term 1870.

This was an action brought before an alderman, by John H. McMasters against The Pennsylvania Railroad Company, in which judgment was rendered for the plaintiff for $38.81; the defendants appealed to the Court of Common Pleas: in which court the plaintiff declared in assumpsit.

The facts upon which the plaintiff's claim was founded were these: On the 5th of August 1868, the plaintiff, through Arbuckles & Co., grocers, delivered to the defendants at their freight depot in Pittsburg a barrel of sugar to be delivered to him at Turtle

Creek, a way station, about twelve miles from Pittsburg, on the line of the defendants' road.

The receipt from the company was the following :—

"Pittsburg, August 5th 1868.

"Received of Arbuckles & Co., in good order, by Pennsylvania Railroad,

| MARKS. | ARTICLES AND WEIGHTS. | |
| --- | --- | --- |
| J. M. McMasters, | 1 bbl. Sugar, 25c. paid. | 265 lb. |
| Turtle Creek. | | MEYERS." |

The plaintiff proved that he had not received the barrel.

Samuel Honz testified : " Sometime about the first week in August 1868, John H. McMasters told me, I think, that there was to be a barrel of sugar to come out on the local freight of that morning, and that I should be at the station to attend to it. I went there before the train was due. I was there when the train stopped. There was no sugar put off for McMasters. Anderson, the painter, who lives at Turtle Creek, was there. Charley Markle was there when the train arrived. Mr. Anderson got some house furniture off the train. I attended there several mornings in succession after that; was there the next morning. There was no sugar put off any of the mornings I was there."

There was other evidence tending to show that the sugar had not been delivered *at the station.*

The defence was that the sugar had been transported on the "Local Freight" train, which stopped at all the stations along the road, and had been delivered at Turtle Creek station, which is one of the minor stations of the company, at which the business is not of sufficient importance to warrant the erection of warehouses, or to have freight agents ; that there is a notorious custom, which had been acquiesced in by all persons in the neighborhood receiving freight, to deliver goods at the station without storing them ; and that plaintiff had been in the habit of receiving goods in this way for a long time and was aware of the custom and acquiesced in it.

They gave evidence by the conductor of the " Local Freight" train, that on the manifest were marks showing the delivery of the sugar ; that it was delivered on the platform at Turtle Creek.

The plaintiff asked the court to charge the jury :—

1. That in the absence of a special agreement to the contrary, and when the goods do not pass into the hands of the consignee or owner on arrival at their destination, the liability of railways as common carriers does not terminate until a reasonable time after unloading the goods upon the platform, within which time the owner or consignee might, by proper watchfulness, have had an opportunity to remove them.

2. That in the absence of express notice to the consignee of the arrival of the goods, and when the same have not been taken

[McMasters *v.* Pennsylvania Railroad Co.]

away by him within a reasonable time the liability of a railway in ceasing to be that of a common carrier becomes that of a warehouseman.

The court (Collier, J.) refused the points "as not applicable to the undisputed facts of the case."

The verdict was for the defendants.

The plaintiff took a writ of error; he assigned for error the answer to his points.

*R. E. Stewart*, for plaintiff in error.—The responsibility of the carrier, as such, ceases only when he has deposited the goods in a depot of his own, or some other safe warehouse: Redfield on Railways, ed. of 1869, § 175, pl. 7, 8, 11; Thomas *v.* Boston and Providence Railway, 10 Met. 472; Chicago and Rock Island Railway *v.* Warren, 16 Ill. 502; Shenk *v.* Penna. Steam P. Co., 10 P. F. Smith 109; Ostrander *v.* Brown, 15 Johns. 39. The usage claimed in this case is invalid, as being contrary to public policy: Hemphill *v.* Chenie, 6 W. & S. 62; C. & A. Railroad *v.* Baldauf, 4 Harris 67; Duff *v.* Budd, 3 Brod. & B. 177; Cole *v.* Goodwin, 19 Wend. 251; Eagle *v.* White, 6 Whart. 505.

*J. Dalzell* (with whom was *J. H. Hampton*), for defendants in error.—The question as to where the duty of the carrier ends, is one of *contract*, to be determined from all that was said at the time of the delivery and acceptance of the goods, the course of the business, the practice of the carrier, and all other attending circumstances, as in any other contract, in order to determine the intention of the parties: Southcote's Case, 4 Reports 84; Mors *v.* Slue, 1 Vent. R. 238; Gibbon *v.* Payntin, 4 Burr. 2301; Leeson *v.* Holt, 1 Stark. R. 186; Nicholson *v.* Willan, 5 East R. 507; Anonymous *v.* Jackson, Peake's Add. N. P. Cas. 185; Angell on Carriers 227, 316; Riley *v.* Horne, 5 Bing. 217; 2 Redfield on Railways, p. 51, pl. 2; 53, pl. 4; F. and M. Bank *v.* Champlain Transportation Co., 23 Vt. R. 186; Story on Bailments, § 543. If there is any *local custom*, or usage of trade on the subject, *that* will govern. The carrier may prove, that the uniform usage and course of business in which he is engaged, is to leave the goods at his usual stopping-places, in the towns to which they are directed, without notice; and if such usage has been of so long continuance as to justify a jury to find that it was known to the employer, the carrier will be discharged: Angell on Carriers, pl. 316; Gibson *v.* Culver, 17 Wend. 305; Van Stantwood *v.* St. John, 6 Hill 157; Beckman *v.* Shouse, 5 Rawle 179; Bingham *v.* Rogers, 6 W. & S. 475; Laing *v.* Colder, 8 Barr 479. From either notice or custom there results a special contract, and under this contract the carrier is an insurer only to the extent of its terms: Farnham *v.* C. & A. Railroad Co., 5 P. F.

[McMasters v. Pennsylvania Railrood Co.]

Smith 53; Cope v. Cordova, 1 Rawle 203; Hemphill v. Chenie, 6 W. & S. 62; Graff v. Bloomer, 9 Barr 114. A common carrier is not bound to be also a warehouseman: Thomas v. B. & P. Railroad Co., 10 Metc. 476; McCarty v. N. Y. & Erie Railroad Co., 6 Casey 252. Where the carrier is bound to store, when he has provided a warehouse the shipper knows that fact, and thereby there is " created an expectation" that his goods will be stored a reasonable time, if necessary: 2 Redfield, § 175, pl. 7, 8, 11. The usage proven is reasonable. To apply the same rule of law to a local train, carrying small freight to way stations that is applied to a through train carrying heavy freight in great quantities, from city to city, would work great injustice: Morris and Essex Railroad Co. v. Ayres et al., 5 Dutcher 393.

The points of the plaintiff were not applicable to the facts of this case: McKnight v. Ratcliff, 8 Wright 156. In this case there was no " absence of a special agreement;" on the contrary, it was fully understood by each party, shipper and carrier, what was to be his duty, to wit, what in a long course of dealing had always been the duty of each.

The opinion of the court was delivered, October 30th 1871, by Thompson, C. J.—The important question of this case is, whether the common liability of common carriers, in its application to carriers by rail, has been or is subject to be modified by usage or custom. That it has been materially modified in its application to the mode of carrying from what it was and is, under the old modes of transit by wagons or by water-craft, every one knows. By the former, the carrier's liability only ceased with a delivery of the goods to the person, or at the residence or place of business of the consignee; and by the latter, on giving notice of their arrival at the usual place of delivery to the consignee, and care of the goods for a reasonable time to enable him to take them away. Custom has modified this, as is shown in 2 Red. on Railways 51, 52; 5 Dutcher (1 N. J.) 393; 10 P. F. Smith 109; manifestly because of the inapplicability of the old system to the new mode of transit. Every day the old rule is being gradually modified by contract, usage or notice, to fit it to the new order of business in that line. Indeed, the whole system of the law of common carriers grew out of customs moulded into form and made practical by the courts in England, and hence for a long time, when suits were brought against persons engaged in the carriage of goods and merchandise, the action was called an action upon the custom of the realm. In modern times the practice is to sue upon the contract. It would be strange if the process of improvement by custom and usage is to stop just here and go no further. I regard it as a matter not debateable at this day, that a custom so long persisted in as to be known and practised by a community, shall not be-

[McMasters *v.* Pennsylvania Railroad Co.]

come the law of the particular business in which it exists in the community, from which the presumption will arise that it is in the view of the parties who contract about the subject-matter of it, and depend that it will be the interpreter of their contracts whenever they leave room for a resort to it.   In other words, where the express terms of the contract do not exclude it, usages of this kind in trade, which have a like effect when clearly established, are generally found in practice to exhibit a superior adaptedness to the convenience and wants of the community to those which are superseded by them, and in this way development and progress results.   It is hardly necessary to say that all usages that become customs must be reasonable; for it is not likely in modern times that anything else would be suffered to grow into a custom, nor that it must be continued, for otherwise .it would never become a custom; still both these elements are requisites, and also that they be peaceably acquiesced in by all acting within the scope of their operations.   Let us now, therefore, endeavor to apply these generalizations to the case in hand, so far as they are applicable to it.

On the 8th of August 1868, the plaintiff bought a barrel of sugar at the city of Pittsburg, and directed his merchants to ship it to him at Turtle Creek, a way-station on the defendants' road, some dozen or fourteen miles from the city, the next day.   They did so, and paid freight, but the plaintiff never got the sugar, although he sent for it, but from the evidence most likely not on the day it was shipped, but on the second day.   It became a question, therefore, on the trial, whether the defendants' servants actually delivered the sugar on the platform of that station on the day it should have arrived there.   The verdict of the jury was a finding that it was so delivered as stated by defendants' witnesses.

The defendants had no warehouse at that place, and gave no notice to the consignee that the sugar had been delivered at that place, but insisted that it was the custom for consignees to be present themselves, or by somebody for them, to receive goods shipped for them by rail to that place.   This custom was testified to by the plaintiff himself, and also by the conductor of the local. freight-train, and the proof was not at all controverted.   Was this uncontroverted custom sufficient excuse for the want of ware-. housing, and of notice to the consignee by defendants?   The learned judge thought it was, and so instructed the jury, and there was a verdict for the defendants.   In other words, he held a delivery on the platform a good delivery under the custom.

That a custom or usage will control the general law of liability of carriers is shown by many cases.   I will quote briefly from a few of the decisions to that effect, as also from some of our most reliable text-writers.   Amongst the clearest and strongest of the decisions on the point, is, The Farmers' and Mechanics' Bank *v.*

The Champlain Transportation Company, 23 Vt. 186. The question arose on the sufficiency of the delivery of a package of money carried by the transportation company for the bank. The case was before the Supreme Court of Vermont *three* times, and that court, says Parsons, in his note to it, "has uniformly held, that in the absence of any special contract, a delivery to the wharfinger, without notice, if warranted by the usage of the place, was sufficient, and discharged the defendants from all liability." Judge Redfield appends this as a note to section 2, p. 51, 2d volume of his work on Railways, where he says, "That transportation being confined to a given line, according to the ordinary and reasonable course of business, goods must be delivered and received at the stations of the company." Angell on Carriers, sect. 316, 3d ed., lays it down thus: "But the carrier may be permitted to prove that the uniform usage and course of business in which he is engaged is, to leave goods at his usual stopping-places in the town to which they are directed, without notice, and if such usage has been so long continued as to justify a jury to find that it was *known to the employer*, the carrier will be discharged." The text of this placitum, is supported to the letter, almost, by the case of Gibson *v.* Culver, 17 Wend. 305. In that case also, there are two English cases cited, which give very clear countenance to the doctrine announced, namely, Garside *v.* The Proprietors of the Trent and Mersey Nav. Co., 4 T. R. 581, in which it was held that the usage and course of business were properly received to determine whether the defendants, at the time when the goods were lost, held them as common carriers, or were wharfingers for the plaintiffs. The proof was confined, too, to the course of business of that particular line of stages, and on this ground the cause was determined in favor of the defendants. The other case is Hyde *v.* Same, 5 T. R. 389, and it was agreed by the judges that carriers by canal must, by the general law, make a personal delivery to the consignee, but that this obligation might be affected by the custom of the trade. This is very clearly shown in Van Santuhood *v.* St. John & Toussey, 6 Hill 157, where the same doctrine is clearly maintained. Our own case of Cope *v.* Cordova, 1 Rawle 203, is full to the same effect. Rogers, J., in delivering the opinion of the court, among other things, said: "If a special verdict had found a uniform usage the one way or the other, we should have held ourselves bound by the custom; for I fully accede to the principle, *that the mode of delivery is regulated by the practice of the place.* The contract is supposed to be made in reference to the usage at the port of delivery. But if no usage had been found, we hold it equally clear, that we should be governed by the general custom." This is a clear recognition of the power of custom to regulate the liability of common carriers, and I need not further

multiply cases to prove a matter so consonant to reason as this. The cases cited by the plaintiff in error are good law, but relate to adjudications on the law of carriers, without any reference to the question here, viz., how far it is within the usage and course of business to modify the duties and liabilities of common carriers. But in all cases where this is relied upon by the carrier, the custom or usage must be clearly proved, and that the employer knew it, or is presumed to know it, by reason of its generality in the neighborhood where it is claimed to exist.

The case below was well ruled. Both points, the delivery of the sugar and the custom, were found, on proper instructions, in favor of the defendant. There being no error in the record,

The judgment is affirmed.