GATES *v.* RYAN *et al.*[1]

(*District Court, S. D. New York.* December 18, 1888.)

1. DEMURRAGE—LUMBER TRADE—CUSTOM—IDLE DAYS.
    There is no well-established rule in the port of New York as to the discharge of eastern lumber. By the custom of the port three "idle days" are allowed the consignee after the vessel reports arrival within which to send her to a berth. Hence, where a lumber schooner from Nova Scotia arrived on Wednesday, was sent to a wharf on Saturday, and began her discharge on the following Wednesday, Sunday and Labor Day (first Monday in September) intervening, *held*, that she was entitled to one day's demurrage.

2. SAME—LIABILITY OF CONSIGNEE.
    The consignee of cargo and holder of the bill of lading, though but an agent to sell, is liable for both freight and demurrage.

In Admiralty. Action for freight and demurrage.

*R. D. Benedict,* for libelant.

*A. J. Heath,* for respondents.

BROWN, J. There is no dispute about the amount of freight due, namely, $556.37, after deducting all the defendant's alleged offsets. The defendant offered to pay freight, but refused to pay any demurrage. In the offer of payment, however, a receipt in full of all claims was demanded, which the defendant had no right to require. There has been no payment of freight into court.

The charter provided for discharge with customary dispatch. The vessel was loaded with lumber from New Brunswick, N. S. There is no perfectly established rule as respects the rate of discharge of eastern lumber. Several large dealers testified that a discharge of 30,000 feet per day, board measure, had long been considered a reasonable rate of discharge. On the other hand, there is evidence that indicates that that ought now to be considered an unreasonably slow rate of discharge after the vessel is ready to begin; from 40,000 to 70,000 feet being a quite common rate of discharge per day. Three days are allowed by custom,

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

after the vessel reports arrival, within which to send her to a berth where she can unload her cargo at once. This vessel had 232,000 feet. Three days were consumed before she was directed to her wharf at Harlem. She arrived there some time on Saturday. Sunday and Labor Day (the Monday following) intervened, both of which are holidays. She began the discharge on Wednesday and finished on Saturday, discharging at the rate of 70,000 feet per day. Under the custom, which I think established, to allow three days to find a discharging berth, and the intervening holidays, I cannot hold the respondent bound to commence the discharge before Tuesday morning. The vessel was then in readiness; but the discharge was delayed till Wednesday, when it should have begun on Tuesday. She is therefore entitled to demurrage for one day's detention. *Bowen* v. *Decker*, 18 Fed. Rep. 751; *The Z. L. Adams*, 26 Fed. Rep. 655; *Paquette* v. *Cargo of Lumber*, 23 Fed. Rep. 301.

The respondents were the New York agents of the shippers, and the consignees and holders of the bill of lading; and after arrival they sold the cargo and directed its delivery. They were interested in it to the extent of their commissions on the sale, and were the persons who were to pay the freight, and who in fact offered to pay it, without demurrage. Such a consignee, receiving and disposing of the cargo, is liable for both freight and demurrage. *Irzo* v. *Perkins*, 10 Fed. Rep. 779; *Neilsen* v. *Jesup*, 30 Fed. Rep. 138; *Reed* v. *Weld*, 6 Fed. Rep. 304; *Sprague* v. *West*, Abb. Adm. 548.

The libelant is entitled to a decree for $556.37 freight, and $25, the stipulated rate of demurrage for one day, with interest and costs.