112   239
116   147
117   515.

PENNSYLVANIA RAILROAD COMPANY *v.* J. J. NAIVE.

(*Nashville.*   December Term, 1903.)

1. **VERDICT.** Supported by some evidence will not be disturbed by supreme court, when.

Where there is some evidence to support the verdict of the jury approved by the trial judge, the supreme court will not reverse the case upon the facts. (*Post, pp.* 248, 250.)

2. **EVIDENCE.** Admission of opinion evidence shown to be correct by facts is harmless error, and no ground for reversal.

The admission of opinion evidence is a technical, but harmless error, and there can be no reversal upon such ground, where the opinion evidence is shown to be correct from the uncontroverted facts of the record. (*Post, pp.* 248, 250.)

3. **CUSTOM.** To suspend business on the fourth of July may be shown, when.

Evidence is competent and admissible to show an established, certain, uniform, and notorious custom to suspend all business on the fourth day of July, in a city to which freight is consigned, and the exclusion or rejection of such evidence is error, for such usage is reasonable and not in violation of law, and forms a part of the shipping contract, unless the contrary appears. (*Post, pp.* 248, 249, 250-261.)

Cases cited and approved: Turner v. Wilson, 7 Yer., 342; Cooper v. Sanford, 4 Yer., 452; Wilson v. Knott, 3 Hum., 475; Mays v. Jennings, 4 Hum., 106; Dabney v. Campbell, 9 Hum., 685, 686; Bedford v. Flowers, 11 Hum., 242; Dean v. Vaccaro, 2 Head, 488; Saint v. Smith, 1 Cold., 52; Charles v. Carter, 96 Tenn., 607, 613, 614; Sands v. Railroad, 108 Tenn., 2, 12; McClusky v. Klosterman, 20 Or., 108; Insurance Co. v. Insurance Co. (Cal.), 40 Pac., 431, 28 L. R. A., 692, 694, 48 Am. St. Rep., 140; Brown

Railroad v. Naive.

v. Howard, 1 Cal., 423; Taylor v. Castle, 42 Cal., 367; Auzerais v. Naglee, 74 Cal., 60; Blake v. Stump, 73 Md., 160; Foley v. Mason, 6 Md., 51; Bank v. Bank, 51 Md., 128; Bank v. Grafflin, 31 Md., 520; Patterson v. Crowther, 70 Md., 125; Dempsey v. Dobson, 184 Pa., 588; Rumpel v. Railroad (Idaho), 35 Pac., 700, 22 L. R. A., 725, 731; Warden v. Railroad, 94 Ala., 277; Coal & Iron Co. v. Tucker, 48 Ohio St., 41; Freary v. Cooke, 14 Mass., 488; Coal Co. v. Sanderson, 94 Pa., 303; Railroad v. Anderson, 58 Ga., 393; Ferguson v. Gooch, 94 Va., 1; Baseball & Exhibition Co. v. Pickett (Md.), 28 Atl., 279, 22 L. R. A., 690, 692, 44 Am. St. Rep., 304; Fairly v. Mills, 44 S. C., 227; Geyser-Marion, etc., Co. v. Stark, 45 C. C. A., 467; Irwin v. Williar, 110 U. S., 499; Allen v. Bank, 120 U. S., 20, 39; Robinson v. Mollette, L. R., 7 H. L., 802, 816, 828, 836; Barnard v. Kellog, 10 Wall., 383; Shaw v. Spencer, 100 Mass., 382, 393; Lehman v. Marshall, 47 Ala., 362; Leuckhart v. Cooper, 3 Bing. (N. C.), 99; Baxter v. Sherman, 73 Minn., 434, 441; Scott v. School District (Vt.), 31 Atl., 145, 27 L. R. A., 588, 589; Railroad v. Fagan, 72 Tex., 127; Land Co. v. Dennis, 85 Ala., 565; Coal & Iron Co. v. Tucker, 48 Ohio St., 41; Mayer v. Thompson (Ala.), 16 South., 620, 28 L. R. A., 433, 437; Allen v. Railroad, 183 Pa., 174; Railroad v. Carter, 165 Ill., 570; Gibson v. Culver, 17 Wend., 305; Manufacturing Co. v. Steamboat Co., 50 N. Y., 121; Bowen v. Decker (D. C.), 18 Fed., 751; Gates v. Ryan (D. C.), 37 Fed., 154; Ely v. Steamboat Co., 53 Barb. (N. Y.), 207.

4. **SAME. Same. Principal is bound by custom at place of his agent, though he has no actual knowledge of it.**

One who ships goods to his agent at a place where there is an established, certain, notorious, and uniform custom to suspend all business on the fourth day of July is bound by such custom, though he has no actual knowledge of it. (*Post, pp.* 251-255.)

Cases cited and approved: Arrington v. Cary, 5 Baxter, 609, 610. 611; Sahlien v. Bank, 90 Tenn., 221, 225-229, limiting Dabney v. Campbell, 9 Humph., 680; Bank v. Bank, 98 Tenn., 337, 339; Railroad v. Carter, 165 Ill., 570; Bank v. Transportation Co.,

Railroad v. Naive.

18 Vt., 131, 140; Bank v. Transportation Co., 23 Vt. 186; Mc-
Masters v. Railroad, 69 Pa., 374; Turner v. Huff, 46 Ark., 222;
Skiff v. Stoddard (Conn.), 26 Atl., 874, 881, 21 L. R. A., 102, 112;
Samuels v. Oliver, 130 Ill., 73; Bank v. Triplett, 1 Pet., 25.

Case cited and distinguished:  Grissom v. Bank, 87 Tenn., 350-
354.

5. SAME.  Same.  Common carrier's failure to give notice of ar-
rival of goods is not negligence during suspension of all busi-
ness.

Negligence cannot be predicated of the conduct of a common
carrier in failing to give notice of the arrival of goods on the
fourth of July where there prevails an established certain,
notorious, and uniform custom to suspend all business on that
day.  (*Post*, *pp*. 260-261.)

Cases cited and approved:  Gibson v. Culver, 17 Wend., 305; Man-
ufacturing  Co. v. Steamboat Co., 50 N. Y., 121; Bowen v.
Decker (D. C.), 18 Fed., 751; Gates v. Ryan (D. C.), 37 Fed.,
154; Ely v. Steamboat Co., 53 Barb. (N. Y.), 207.

6. COMMON CARRIERS.  Must diligently protect freight in ac-
cidents or emergencies.

In case of an accident or an emergency endangering goods in
the hands of a common carrier it is bound to use diligently and
actively the proper means to protect and secure the property
confided to its care.  (*Post*, *pp*. 256-257.)

Cases cited and approved: Railroad v. David, 6 Heis., 261, 264-
265; Lamont v. Railroad, 9 Heis., 66; Sherman v. Steamship
Co., 26 Hun, 107; Peck v. Weeks, 34 Conn., 145; Chouteaux v.
Leech, 18 Pa., 224; Bird v. Cromwell, 1 Mo., 81.

7. SAME.  Must give consignee prompt notice of arrival of goods;
three days' limit.

Under our statute common carriers are required to give the con-
signee prompt notice of the arrival of freight or merchandise
according to the nature of thee goods, but not later than three
days in any case.  (*Post*, *pp*. 259-260.)

112 Tenn—16

Railroad v. Naive.

Code cited and construed:  Sec. 3597 (S.); sec. 2788 (M. & V.).

Acts cited and construed:  1870-71, ch. 17, sec. 1.

Cases cited and approved:  Railroad v. Nelson, 1 Cold., 272, 276; Butler v. Railroad, 8 Lea, 32.

8. **HOLIDAYS.** Fourth of July is a holiday under our statute.
Under our statute, the fourth of July is a holiday upon which all business may be suspended at the option of the parties in interest or managing the same. (*Post, pp.* 261-262.)

Code cited and construed:  Sec. 3515 (S.); sec. 2723 (M. & V.); sec. 1966 (T. & S. and 1858).

9. **PRESUMPTION.** That laws of another State are the same as our own.
In the absence of proof of the laws of another State they will be presumed to be of the same as our own. (*Post, pp.* 259, 262.)

10. **COMMON CARRIERS.** Railroads liable as, until goods are deposited in depot or warehouse.
The liability of a railroad company as common carrier does not cease, and its liability as warehouseman does not begin until the goods are deposited in the depot or warehouse. (*Post, pp.* 262-263, 265.)

Cases cited and approved:  Express Co. v. Kaufman, 12 Heis., 161, 162, 165; Butler v. Railroad, 8 Lea, 32; Railroad v. Kelly, 91 Tenn., 699.

11. **SAME.** Presumption of negligence from damage to property received in good condition; burden to remove such presumption.
When property has been delivered in good condition to a common carrier and it has been damaged while in the possession of such carrier, nothing else appearing the necessary presumption is that there has been negligence on the part of the carrier, and the burden is cast upon the carrier to remove this presumption. (*Post, pp.* 263-265.)

Railroad v. Naive.

Cases cited and approved:  Railroad v. Holloway, 9 Bax., 188;
Transportation Co. v. Bloch, 86 Tenn., 392; Railroad v. Wynne,
88 Tenn., 320.

**12. SAME.** Same.  Same rule where one of several connecting
lines are sued.

The rule stated in the foregoing headnote, numbered eleven, ap-
plies when any one of the connecting lines is sued for injury to
the property, where the goods are shipped over several connect-
ing lines.  (*Post, pp.* 264.)

**13. INSTRUCTIONS.** Requested must be strictly correct or re-
fusal will not be error.

An instruction requested must be strictly correct; otherwise the
trial judge cannot be put in error by his refusal to charge it.
(*Post, p.* 265.)

**14. COMMON CARRIERS.** Must give notice; consignee not re-
quired to inquire as to arrival overdue.

The consignees of the perishable freight, as the agents of the con-
signor, are not bound to make inquiry at the office of the com-
mon carrier therefor in the absence of notice of arrival, though
they have reason to believe that the shipment is overdue.  The
common carrier cannot in this manner shift its absolute duty
to give prompt notice of the arrival.  (*Post, p.* 266.)

**15. PRACTICE.** Requested instructions may be based upon a pa-
per "considered as read," when.

Where a paper, a bill of lading, is offered in evidence and is for-
mally admitted without objection, and it is agreed to "consider
it as read," though it is not actually read, and the judge's at-
tention is not called to its provisions until after he has de-
livered his charge, and then only by request for additional in-
structions, if the matter be pertinent, it would be error in the
court to refuse such request, because such paper had not been
formally read to the court and jury.  But there is no hurt-
ful error, where the instruction requested had no bearing upon
the real case.  (*Post, pp.* 266-268.)

Railroad v. Naive.

**16. EVIDENCE.** Improper exclusion, where merits are not affected, is not reversible error.

There is no reversible error in the improper exclusion of evidence not affecting the merits, and where it is perfectly apparent to the supreme court that the result attained was the correct one, and could not properly be otherwise upon a new trial with the admission of such excluded evidence. (*Post, p.* 268.)

Code cited and construed: Sec. 6351 (S.); sec. 5268 (M. & V.); sec. 4516 (T. & S. and 1858).

Cases cited and approved: Jones v. Telephone Co., 101 Tenn., 443; Oliver v. Nashville, 106 Tenn., 273, 274, 281.

**17. SAME.** Same. Case in judgment.

Under the rule stated in the sixteenth headnote, the error committed as shown in the third headnote is not reversible error, where the uncontroverted evidence showed that the carrier was negligent for thirty hours in failing to care for and preserve the perishable goods, after arrival at destination. (*Post, pp.* 268-270.)

---

FROM SUMNER.

---

Appeal in error from the Circuit Court of Sumner County.—B. D. BELL, Judge.

---

Statement by MR. JUSTICE NEIL.

The plaintiff below was a dealer in eggs, poultry, and produce, having places of business at Gallatin and Nashville, this State.

---

Railroad v. Naive.

---

On Saturday, the twenty-ninth day of June, 1901, he consigned to Wm. Soeder & Son, at Philadelphia, Pa., a shipment consisting of 25½ barrels of dressed poultry. A reasonably prompt transportation of the goods would have put them into Philadelphia on Wednesday afternoon, which was July 3, 1901; and the consignment, if in good condition, and properly packed in ice, would have been in a sound and merchantable condition on its arrival in Philadelphia.

The shipment was sent over the Star Union Line, going from Nashville and Gallatin to Philadelphia over the Louisville & Nashville Railroad Company to Cincinnati, and from that point over the line of the defendant railroad company to Philadelphia.

The goods arrived in Philadelphia on Wednesday afternoon, July 3, about 5 o'clock. This was after business hours, just prior to the close of business, and too late to unload during business hours of that day, and too late to notify consignees and effect delivery.

The car containing the goods was put on the siding of the Quaker City Cold Storage & Warehouse Company about 11 o'clock p. m. of July 4th; this company being a terminal for the Pennsylvania Railroad Company's perishable freights, and acting as its agent in keeping, unloading, and delivering such freights. It is not, in terms, shown where the car was from 5 o'clock p. m. July 3d to 11 o'clock p. m. July 4th, but no other inference can be drawn than that it was in the yards of plaintiff

in error, not in cold storage, but exposed to the hot weather.

On the morning of July 5th, Geo. Soeder, one of the consignees, called at the warehouse, and was informed by the delivery clerk that he knew nothing of the shipment as yet. Shortly after this the employees of the warehouse company seemed to have looked up the property, and delivery was made about one hour later—about 9 o'clock on the morning of July 5th. The weather at this time was extremely warm. While some of the witnesses say that the car was "good and cold," and had 2,100 pounds of ice in its ice bunkers, still, as otherwise shown, it requires at least three tons of ice to properly ice a car during such weather as prevailed on July 3d and 4th of 1901. At this time (that is, when delivery was made) the barrels containing the poultry were bare of ice. The ice had, the witnesses say, melted during the delay between the date of the arrival of the goods and their delivery to the consignees. In such weather as prevailed July 3 to July 5, 1901, dressed poultry bare of ice will spoil within a few hours.

When the poultry was unloaded and delivered to consignees, it was badly decayed. Some of it was thrown away, and the residue was immediately cleaned up, packed in finely crushed ice, and put upon the market, and within two hours thereafter was sold for the best price obtainable.

The testimony shows that the poultry was carefully and properly packed in barrels at Nashville and Galla-

tin, according to the best requirements of the business.

There is no direct evidence that the poultry was in good condition when it was packed, but we infer from certain statements in the testimony of the plaintiff below, Mr. Naive, that it was in good condition; that is, that it was fresh. He shows that he took special pains with the shipment, on account of the hot weather, and packed it according to the best method known to the business; and, describing the method of preparing dressed poultry for shipment, he says: "We dress it and cool it out, and then pack it in ice in barrels." We infer from the expression, "We dress it and cool it out," that the poultry involved in the present controversy had been freshly killed immediately before the shipment was made, and then properly cooled out and packed in the manner stated.

The record does not disclose any inquiry as to the shipment, either by plaintiff, Naive, or his agents, prior to July 5th; but it does show that Mr. Lindsey, agent of the Pennsylvania Road at Nashville, called up Mr. Naive on July 4th, and informed him that the goods had arrived on July 3d.

It is admitted that the difference in the market price of the poultry in the condition in which it was when delivered to consignee and the condition in which it was when delivered to the carrier was $202.46.

The jury returned a verdict for this amount, with interest from July 5, 1901, amounting altogether to $229.48.

Railroad v. Naive.

From this judgment the railroad company has appealed and assigned errors.

The errors assigned are as follows:

(1)   That there was no evidence to support the verdict of the jury, in that there was no material evidence to show that the poultry was properly packed by defendant in error, and in that there was no material evidence to show that the poultry was in good condition when delivered to the carrier.

(2)   That the court erred in permitting George and William Soeder to testify that nothing was omitted to be done towards the proper handling of the poultry after it was received by them. The ground of the objection was that the question called merely for the expression of and opinion on the part of the witnesses referred to.

(3)   That the court erred in permitting George and Wm. Soeder to testify that the delay in the delivery of the poultry after it arrived in Philadelphia was not caused by anything that they did or failed to do towards procuring its prompt delivery. The ground of this objection made in the court below was the same as that stated under the preceding assignment.

(4)   That the court erred in excluding the evidence as to the custom of suspending business on July 4th.

In respect of this matter, the defendant below offered to prove that July 4th was observed in Philadelphia by carriers and among business men of all classes by suspending business, and this custom of suspending busi-

Railroad v. Naive.

ness was an established one—general, certain, and uniform—in the city of Philadelphia.

The defendant offered the depositions of witnesses showing that their answers would establish the points just indicated.

On objection of the plaintiff below, this testimony was ruled out by the circuit judge.

It was not proven that the plaintiff had any knowledge of this custom prevailing in Philadelphia when he made the shipment to that city.

(5)   That the court erred in charging the law of common carriers as applicable to this case.

It is insisted that there was nothing in the case to show liability as a common carrier; on the contrary, that the liability, if any, of the plaintiff in error, was that of a warehouseman, and that the court should have charged the law regulating the liability of warehousemen.

(6)   That the court erred in its charge in respect of the burden of proof.   It is said that by the court's charge the burden of proof was thrown on the defendant to show that it was guilty of no negligence, whereas the court should have charged that the burden of proof was on the plaintiff to show negligence.

(7 to 15)   It is insisted that the court erred in refusing to charge, or in failing to charge, as prepared, requests Nos. 1, 5, 6, 7, 10, 11, 12, 13, and 14 offered by the plaintiff in error in the court below.

The particulars of these requests will be stated in the body of the opinion, as far as may be deemed necessary.

Railroad v. Naive.

THOS. H. MALONE, Jr., for Railroad Company.

SEAY & SEAY, for Naive.

---

Mr. Justice Neil, after making the foregoing statement of facts, delivered the opinion of the Court.

The first assignment of error is not well taken, and must be overruled. We think the facts set forth in the statement are sufficient to show that there was some evidence from which the jury might reasonably infer that the goods were in good condition and properly packed when delivered by the consignor to the carrier for shipment. This meets the requirements of the rule of law applicable to the subject.

The second and third assignments may be considered together. While his honor, for the reasons set out in the objection made by counsel, committed a technical error in allowing the witnesses Geo. and Wm. Soeder to make the statement referred to, yet the error was innocuous, and there can be no reversal on such ground. The error was innocuous because it appears from the uncontroverted facts of the record that the persons referred to (the consignees) were in no wise responsible for the delay in delivering the goods, and that upon receiving them they exercised the utmost diligence in separating the spoiled poultry from that which was still merchantable, and also in cleaning up, preparing, and putting the latter on the market.

The fourth assignment and the fifth and thirteenth re-

quests all relate to the same matter—the rights of the parties as affected by the intervention of the 4th of July. We need not specially refer to the requests, as they will be disposed of in determining the fourth assignment. The question to be decided, then, is whether his honor erred in excluding the testimony referred to in that assignment. Our conclusion is that he did commit error in this matter.

It is true that the custom of suspending business on the 4th of July in Philadelphia was not known to the plaintiff below (that is, he had no actual knowledge of it) ; but when he dealt in that market, as in the present instance, through his agents, Wm. Soeder & Son, or sent goods there to his agents at that point for sale, the law visited him with constructive knowledge of a custom so certain, well-established, and general as the one referred to is shown to have been in that city. This principle is illustrated by the following cases: In *Illinois C. R. Co. v. Carter*, 165 Ill., 570, 46 N. E., 374, 36 L. R. A., 527, speaking of a custom prevailing at a particular port to waive the rule requiring carriers by water to give notice of the arrival of the goods to the consignee, the court said: "While it is a general rule that a carrier by water is required to give notice of the arrival of the goods to the consignee, it is well settled that such notice may be waived, either by the previous course of dealing between the parties, or by the usual course of business of carriers in the same trade in which the carrier is

employed at the locality where the goods are landed, and this whether the usage was known to the shipper or not; the rule being that any person who contracts with another for services in his particular trade is understood to contract with reference to the usage of the trade. The carrier may therefore show, as has been repeatedly held, the usage as to the delivery of the goods by those engaged in the carriage of goods by water in the particular port or at the particular place of delivery, and that he has acted according to it. Hutchinson, Carr. section 366." See, also, *Farmers' & Mechanics' Bank* v. *Champlain Transportation Co.,* 18 Vt., 131, 140; same case, on third appeal, 23 Vt., 186, 56 Am. Dec., 68; *McMasters* v. *Pennsylvania Railroad Company,* 69 Pa., 374, 8 Am. Rep., 264; *Turner* v. *Huff,* 46 Ark., 222, 55 Am. Rep., 580; 36 L. R. A., 527. In *Skiff* v. *Stoddard* (Conn.), 26 Atl., 881, 21 L. R. A., 102, 112, it is said: "When one employs another to deal in a particular market, he will be held as intending that the mode of performance should be in accordance with the established customs and usages of the market, as long as the custom or usage is neither immoral, unlawful, unreasonable, contrary to the express agreement of the parties, nor such as to change the intrinsic character of the undertaking;" citing *Samuels v. Oliver,* 130 Ill., 73, 22 N. E., 499, and other cases.

This was said in respect of a custom of brokers to repledge stock bought for their customers on the New York market: "When the plaintiff," said the court,

"gave their orders to Bunnell & Scranton, they understood that the orders were for execution in the New York Stock Exchange. They knew the relation of Bunnell & Scranton to the exchange, and their mode of transacting business therein through New York houses, members thereof. They must therefore be held to have contemplated and authorized a course of delivery in accordance with the rules and customs of that market."

The same principle was, in effect, announced by this court in the case of *Sahlien* v. *Bank,* 90 Tenn., 221, 225-229, 16 S. W., 373, approving *Bank* v. *Triplett,* 1 Pet., 25, 7 L. Ed., 37, and limiting *Dabney* v. *Campbell,* 9 Hum., 680; and it was expressly decided in *Savings Bank* v. *National Bank,* 98 Tenn., 337, 39 S. W., 338. In that case it is stated, in direct terms, in the opinion (page 339 98 Tenn.; page 339, 39 S. W.), that the foreign bank, held bound by the local customs of the banks of Nashville, to one of which it had sent a debt for collection, had no knowledge of these customs. In *Arrington* v. *Cary,* 5 Baxt., 609, 610, 611, the parties were allowed to prove the custom prevailing in a given city in respect of the conduct of a particular business.

The cases above cited and commented upon have reference, it is true, to customs and usages of business in places to which one ships goods, or where he deals through an agent or otherwise; but the principle must be the same as to a custom existing in such market or place of delivery which affects all business alike, by suspending all business for a definite time.

The case of *Grissom* v. *Bank,* 87 Tenn., 350-354, 10 S. W., 774, 3 L. R. A., 273, 10 Am. St. Rep., 669, is not an authority to the contrary.

The custom referred to in that case was not general, uniform, and certain. The court did not have before it in that case a state of facts in any wise similar to those appearing in the present case; nor did the court in that case intend to contravene the principle that the parties are presumed to contract in view of a custom pertaining to the subject-matter of the contract, when such custom is well established and generally known and observed. Indeed, the rule is general that in all contracts as to the subject-matter of which known usages prevail, the parties are held to have proceeded on the tacit assumption of such usages, and to have contracted in reference to them, unless the contrary appears, and the usages form a part of the contract. *McCulsky* v. *Klosterman,* 20 Or., 108, 25 Pac., 366, 10 L. R. A., 785; *Union Ins. Co.* v. *Am. Fire Ins. Co.* (Cal.), 40 Pac., 431, 28 L. R. A., 692, 694, 48 Am. St. Rep., 140, citing *Brown* v. *Howard,* 1 Cal., 423; *Taylor* v. *Castle,* 42 Cal., 367; *Auzerais* v. *Naglee,* 74 Cal., 60, 15 Pac., 371. However, a custom or usage, to be so available against a party must be certain and uniform, and so notorious as to affect him with knowledge of it, and raise the presumption that he dealt with reference to it, or he must be shown to have had actual knowledge of it. *Blake* v. *Stump,* 73 Md., 160, 20 Atl., 788, 10 L. R. A., 103; *Foley* v. *Mason,* 6 Md., 51; *Second Nat. Bank of Balti-*

*more* v. *West Nat. Bank of Baltimore,* 51 Md., 128, 34 Am. Rep., 300; *Citizens' Bank of Baltimore* v. *Grafflin,* 31 Md., 520, 1 Am. Rep., 66; *Patterson* v. *Crowther,* 70 Md., 125, 16 Atl., 531. The custom or usage invoked in the present case is shown to have had the requisite certainty, uniformity, and notoriety in Philadelphia; and the plaintiff below, as stated, having dealt with reference to that market, and having shipped his goods there, was bound by it, even though he had no actual knowledge of the custom at the time he shipped the goods. *Ill. C. R. Co.* v. *Carter,* 165 Ill., 570, 46 N. E., 374, 36 L. R. A., 527; *Farmers' & Mechanics' Bank* v. *Champlain Transportation Co.,* 18 Vt., 131, 140, 42 Am. Dec., 491; same case on third appeal, 23 Vt., 186, 56 Am. Dec., 86; *McMasters* v. *Pa. R. Co.,* 69 Pa., 374, 8 Am. Rep., 264; *Turner* v. *Huff,* 46 Ark., 222, 55 Am. Rep., 580; *Skiff* v. *Stoddard* (Conn.), 26 Atl., 874, 21 L. R. A., 102, 112; *Samuels* v. *Olliver,* 130 Ill., 73, 79, 22 N. E., 499; *Savings Bank* v. *Nat. Bank,* 98 Tenn., 337, 39 S. W., 338; *Sahlien* v. *Bank,* 90 Tenn., 221, 225-229, 16 S. W., 373.

It is true that a custom or usage will not be held binding if it be unreasonable. *Dempsey* v. *Dobson,* 184 Pa., 588, 29 Atl., 493, 40 L. R. A., 550, 551, 63 Am. St. Rep., 809; *Rumpel* v. *Oregon Short Line & U. N. R. Co.* (Idaho), 35 Pac., 700, 22 L. R. A., 725, 731; *Warden* v. *L. & N. R. Co.,* 94 Ala., 277, 10 South., 276, 14 L. R. A., 552; *Columbus & N. Coal & I. Co.* v. *Tucker,* 48 Ohio St., 41, 26 N. E., 630, 12 L. R. A., 577, 29 Am. St. Rep., 528; *Freary* v. *Cooke,* 14 Mass., 488; *Pa. Coal Co.* v. *Sanderson,* 94 Pa., 303, 39 Am. Rep., 785; *Central R. & Bkg.*

*Co.* v. *Anderson,* 58 Ga., 393; *Ferguson* v. *Gooch,* 94 *Va.,* 1, 26 S. E., 397, 40 L. R. A., 234, 237.

But we see nothing unreasonable in suspending business for one day in commemoration of the greatest event in our national history. The fact that the weather is usually very warm at this time of the year, and that perishable freight may decay in a few hours, can not alter the conclusion. The same thing might be said in respect of a delivery on Sunday at that time of the year. Such a peril should be guarded against either by so timing the shipment as that the goods will not, in due course of transportation, encounter a nonbusiness day when ready for delivery, or by superior precautions in the packing or preparation of the property for shipment, or by adequate care on the part of the carrier pending the delay. Where dressed meat was being carried, and, owing to a delay of the vessel, the ice in which it was packed melted away, it was held that the carrier was liable for the damage resulting from its failure to supply ice, it appearing that it was practicable to have done so. *Sherman* v. *Inman Steamship Co.,* 26 Hun (N. Y.), 107; *Peck* v. *Weeks,* 34 Conn., 145. When, in the course of transportation, certain furs became wet through an accident to the boat, it was held that it was the carrier's duty to unpack them and allow them to dry immediately, and for a failure to do so the carrier was liable for the damage which such attention would have averted. *Chouteaux* v. *Leech,* 18 Pa., 224, 57 Am. Dec., 602. So where coffee was wet. *Bird* v.

Railroad v. Naive.

*Cromwell,* 1 Mo., 81, 13 Am. Dec., 470.   In *N. & C. R. Co.* v. *David,* MS., Sept. term, 1871, cited in *Lamont & Co.* v. *N. & C. R. Co.,* 9 Heisk., 66, the principle is stated by this court to be that, in case of an accident or emergency endangering goods in the hands of a carrier, it "is bound to use such means as would suggest themselves to, and be within the knowledge and capacity of, well-informed and competent business men in such positions, and such diligence as prudent, skillful men, engaged in that kind of business, might fairly be expected to use under like circumstances, and that this diligence and these means should be actively used to protect and secure the property confided to their care."

A custom or usage is not admissible for the purpose of varying the terms of a special contract.   *Baltimore Baseball & Exhibition Company* v. *Pickett* (Md.), 28 Atl., 279, 22 L. R. A., 690, 692, 44 Am. St. Rep., 304; *Fairly* v. *Wappoo Mills,* 44 S. C., 227, 22 S. E., 108, 29 L. R. A., 215.

Nor is a custom or usage admissible which makes a substantial change in the rights and relations of the parties, and which violates a settled rule of law. *Geyser-Marion, etc., Company* v. *Stark,* 45 C. C. A., 467, 106 Fed., 558, 53 L. R. A., 684, 690, citing *Irwin* v. *Williar,* 110 U. S., 499, 4 Sup. Ct., 160, 28 L. Ed., 225; *Allen* v. *St. Louis Bank,* 120 U. S., 20, 39, 7 Sup. Ct., 460, 30 L. Ed., 573; *Robinson* v. *Mollett,* L. R. 7 H. L., 802, 816, 828, 836; *Barnard* v. *Kellogg,* 10 Wall., 383, 19 L. Ed.,

987; *Shaw* v. *Spencer,* 100 Mass., 382, 393, 97 Am. Dec., 107, 1 Am. Rep., 115; *Lehman* v. *Marshall,* 47 Ala., 362; *Leuckhart* v. *Cooper,* 3 Bing. N. C., 99; *Baxter* v. *Sherman,* 73 Minn., 434, 441, 76 N. W., 211, 72 Am. St. Rep., 631.

And this is true whether the rule so attempted to be violated is one established by statute (*Scott* v. *School Dist. No. 9, etc.* (Vt.), 31 Atl., 145, 27 L. R. A., 588, 589), or a common-law rule (*Missouri Pac. R. Co.* v. *Fagan,* 72 Tex., 127, 9 S. W., 749, 2 L. R. A., 75, 13 Am. St. Rep., 776; *East Birmingham Land Co.* v. *Dennis;* 85 Ala., 565, 5 South., 317, 2 L. R. A., 836, 7 Am. St. Rep., 73; *Columbus & H. Coal & I. Co.* v. *Tucker,* 48 Ohio St., 41, 26 N. E., 630, 12 L. R. A., 577, 29 Am. St. Rep., 528; *Mayer* v. *Thompson* (Ala.), 16 South., 620, 28 L. R. A., 433, 437, 53 Am. St. Rep., 88). These cases are in accord with our own authorities. *Turney* v. *Wilson,* 7 Yerg., 342; *Cooper* v. *Sanford,* 4 Yerg., 452, 26 Am. Dec., 239; *Wilson* v. *Knott,* 3 Hum., 475; *Mays* v. *Jennings,* 4 Hum., 106; *Dabney* v. *Campbell,* 9 Hum., 685, 686; *Bedford* v. *Flowers,* 11 Hum., 242; *Dean* v. *Vaccaro,* 2 Head, 488, 75 Am. Dec., 744; *Saint* v. *Smith,* 1 Cold., 52; *Charles* v. *Carter,* 96 Tenn., 607, 613, 614, 36 S. W., 396; *Sands* v. *Ry. Co.,* 108 Tenn., 2, 12, 64 S. W., 478. Of these cases, *Dean* v. *Vaccaro* is specially relied upon by defendant in error. In that case an attempt was made to wholly dispense with the rule of law requiring carriers by water to give notice of the arrival of the goods, by a custom or usage at Memphis to disregard

Railroad v. Naive.

it altogether.   The court held that this could not be
done.

.   But the custom or usage under examination in the
present case does not vary the terms of the contract be-
tween the parties, nor does it violate any statute or any
rule of the common law.   The contract and the law re-
quired that the railway company should transport the
goods to their destination according to its regular
course of business in the transportation of such articles,
with all reasonable dispatch, and that, on arrival of the
goods, prompt notice should be given to the consignees,
and that, on their demand therefor, delivery should be
made to them.   *E. T. & Ga. R. Co.* v. *Nelson*, 1 Cold.,
272, 276; *Butler* v. *R. Co.*, 8 Lea, 32.   And see Shan-
non's Code, section 3597, as to notice to consignee.   No
proof being made as to law of Pennsylvania upon this
latter subject, we must presume that it is the same as
our own.

Our statute provides "that all common carriers and
express companies doing business within the limits of
this State, shall after the receipt of freight or merchan-
dise for delivery at their warehouse, depot, or station,
notify the consignee by written or printed notice, to be
delivered to the consignee in person at his place of busi-
ness, if in the city or town where received; or if not
residing or doing business in the city or town, then
through the postoffice within three days after the ar-
rival of the goods."   Acts, 1870-71, c. 17, sec. 1; Shan-
non's Code, sec. 3597.   We understand this act to mean

that prompt notice shall be given upon the arrival of the goods, and that three days is fixed as the limit allowed for delay; that is to say, the carrier would not be justified in all cases in delaying notice for the full three days, or, rather, in giving it so as to fall just within three days. The matter would be controlled to a considerable extent by the nature of the goods. For example, what would be prompt notice of the arrival of a consignment of iron would fall far short of the duty of the carrier in the case of perishable goods. But the meaning of the term "prompt notice" can not be settled with precision, as applicable to every case. The expression is a relative one, designed to mark the degree of diligence required of the carrier; and, while a failure to comply with the rule indicated by this expression would be sufficient to charge the carrier with negligence, the rule itself—within the three days, limit—is subject to modification by custom or usage. It was held in a Pennsylvania case that the rule that a carrier must give notice to the consignee of the arrival of goods at destination is subject to exceptions growing out of special circumstances, and out of customs that have grown up for the mutual advantage of shipper and carrier. *Allen* v. *Pa. R. Co.,* 183 Pa., 174, 38 Atl., 709, 39 L. R. A., 535. So, in an Illinois case, it was held that while ordinarily, a carrier by water must notify the consignee of the arrival of goods, before its liability as carrier terminates, yet such notice may be waived by a former course of dealing with the consignee, or by usage pre-

Railroad v. Naive.

vailing among carriers in the same trade at that port. *Ill. C. R. Co.* v. *Carter,* 165 Ill., 570, 46 N. E., 374, 36 L. R. A., 527.  A custom or usage not to give notice of arrival or make delivery on the 4th of July would fall clearly within the principle governing these cases. Such a custom having been, presumptively, within the contemplation of the parties, negligence could not be predicated of the conduct of the railway company in failing to give notice of the arrival of the goods in the present case on the 4th of July.  The following authorities also bear upon, illustrate, and support the conclusion we have reached: *Gibson* v. *Culver,* 17 Wend., 305, 31 Am. Dec., 297; *Russell Mfg. Co.* v. *Steamboat Co.,* 50 N. Y., 121; *Bowen* v. *Decker* (D. C.), 18 Fed., 751; *Gates* v. *Ryan* (D. C.), 37 Fed. 154. And in *Ely* v. *New Haven Steamboat Company,* 53 Barb. (N. Y.), 207, it was held that, where the consignee's place of business was closed, on account of the day being the 4th of July, when the goods arrived, the carrier was excused from giving notice of arrival.

We may add that, if we are mistaken in any of the foregoing views, our statute, it seems, would place the matter beyond controversy.  By section 3515, Shannon's Code, it is provided that the 4th of July and certain other days therein mentioned "shall be holidays, on which all public offices of this State may be closed, and business of every character, at the option of the parties in interest or managing the same, may be suspended, and in order to remove any impediment in the

Railroad v. Naive.

way of the observance of any of said days named as holidays, all negotiable paper falling due on either of said days, shall be due and payable the first business day preceding the same."

There being no evidence to the contrary, we must assume that the Pennsylvania law is the same as our own in this regard.

In the fifth assignment of error, it is indicated that there is nothing in the case to show liability on the part of the railway company as a common carrier; on the contrary, that the liability, if any, is shown by the facts to have been that of a warehouseman, merely, and that the court below should have charged the law regulating the liability of warehousemen, rather that that pertaining to common carriers.

The facts contained in the statement indicate that the goods arrived at 5 o'clock in the afternoon of July 3d, which was within proper time to show reasonable dispatch in transportation from the initial to the terminal point; but they also show that the goods were allowed to remain in the yards of the company from the time of the arrival until July 4th, at 11 p. m., before they were warehoused—a period of thirty hours. Conceding that the company had fully discharged its duty up till 5 o'clock p. m. of July 3d, still it remained liable as a common carrier from that time until the goods were put in the warehouse, and notice given to the consignees. We have three cases bearing upon the subject. All of them recognize as the rule that the

Railroad v. Naive.

liability of the railway company as common carrier does not cease, and its liability as warehousemen does not begin, until the goods are deposited in the depot or warehouse. In neither of them is it denied that notice must be given, also, as a prerequisite. In *Express Co.* v. *Kaufman,* 12 Heisk., 161, 165, it appeared (page 162, 12 Heisk.) that notice had been given. In *Butler* v. *Railroad Co.,* 8 Lea, 32, the duty to give notice was excused, because the consignee had no fixed residence, and the company had no knowledge of his temporary stopping place. In *Railroad* v. *Kelly,* 91 Tenn., 699, 20 S. W., 312, 17 L. R. A., 691, 30 Am. St. Rep., 90, no question of notice was raised, nor was the statute on that subject referred to.

The point made in the sixth assignment is that in the charge of the circuit judge the burden of proof was improperly cast upon defendant below to show that it was guilty of no negligence.

The charge contains two propositions. The first of these is that if the goods were delivered in good condition by the consignor to the initial carrier, the Louisville & Nashville Railroad Company, and were subsequently delivered to the consignees in bad condition by the connecting and terminal carrier, the burden rested upon the latter to show that the injury was not caused by its negligence. The second proposition is that if the goods were delivered by the consignor to the initial carrier in good condition, and were delivered by the latter in like good condition to the connecting carrier, and

the connecting carrier (being the terminal carrier) delivered them to the consignees in a damaged condition, the burden of proof would rest upon such terminal carrier to show that the injury was not caused by its negligence.

We think there was·no error in either instruction. The most' that can be required of a shipper is that he shall deliver his goods to the carrier in good condition, properly packed or prepared for shipment.   From that time forward they are committed to the custody and management of the carriers—the initial and connecting ones.   In the nature of things, he can know nothing of their management of the business, while they—each of them as to its own relation to the matter—can not, by means of their. agents, fail to know all of the facts.   It is nothing more than reasonable, therefore, that each, when sued for injury to the property, should be required to show that it has discharged its duty in respect thereto in the care of the property during transportation, and until delivery.   When property has been delivered in good condition to a carrier, and it has been damaged while in possession of such carrier, nothing else appearing, the necessary presumption is that there has been negligence on the part of the carrier; and the inevitable legal conclusion is that the burden is cast upon the carrier to remove this presumption.

The sixth assignment of error must therefore be overruled. *Transportation Co.* v. *Bloch Bros.*, 86 Tenn., 392, 416, 6 S. W., 881, 6 Am. St. Rep., 847; *M. & C. R.*

Railroad v. Naive.

*Co.* v. *Holloway & Tatum,* 9 Baxt., 188; *Railway Co.* v. *Wynne,* 88 Tenn., 320, 14 S. W., 311.

The first request was properly refused by his honor, because there was no testimony in the record upon which to base the instruction asked. Not only was there no testimony to show that the goods, upon their arrival in Philadelphia, were promptly placed in the company's warehouse, as the request assumes, but, on the contrary, it is shown, beyond cavil or dispute, that they were allowed to remain in the company's yard, exposed to very hot weather, for thirty hours after their arrival. It is true that thereafter they were put in a cold-storage warehouse, where they remained from 11 o'clock p. m. of July 4th until 9 o'clock a. m. of July 5th, when they were delivered to the consignees; but the court below could not, upon the fact of the deposit of the goods in cold storage at the late hour mentioned, properly base an instruction, as requested, to the effect that from the time of the arrival of the goods until their delivery the liability of the defendant below was that of a warehouseman only, and not that of a common carrier. As we have already held, the liability of the defendant below during the thirty hours referred to was that of a common carrier, and not that of a warehouseman. An instruction requested must be strictly correct; otherwise the circuit judge can not be put in error by his refusal to charge it.

The fifth and thirteenth requests have already been disposed of, in what we have said upon the question raised by the fourth assignment of error.

The sixth, seventh, and tenth requests raise the
point that it was the duty of the consignees, as agents
of the consignors, if they had reason to believe that the
shipment was overdue, to make inquiry at the office of
the railway company, and that any injury that might
be caused by delay after they so had reason to believe
that the consignment was overdue would be at their
risk, and not at the risk of the railway company.

His honor the circuit judge declined these requests,
and acted correctly in so doing. The railway company
can not in this manner shift its duties and responsi-
bilities upon its patrons. Its duty is absolute to give
to the consignee prompt notice of the arrival of goods,
and the latter has the right, until such notice is given,
to rest securely in the belief that they have not arrived.
Common carriers are *quasi* public functionaries, and
those who intrust the carriage of goods to them have
the right to presume, until the contrary appears, that
the duties devolved upon them by law have been prop-
erly discharged.

The eleventh, twelfth, and fourteenth requests raise
the point that if the injury, complained of, to the goods
was caused by the operation of certain causes which
were excepted from the liability of the railway company
in the bill of lading, there could be no recovery; like-
wise, that the goods, on arrival at destination, were at
the risk of consignee, and for this reason there could be
no recovery. His honor the circuit judge declined to

Railroad v. Naive.

charge the jury as requested, on the ground that the bill of lading had never been read to the jury or to the court. The bill of exceptions shows that the bill of lading was, in form, offered in the court below by the plaintiff therein, and that thereupon it was formally admitted without objection, but not actually read to the court and jury, or either of them; the respective counsel agreeing, among themselves, in the presence of the court, at the moment, to "consider it as read." It does not appear that any of its provisions were called to the attention of the circuit judge until after he had delivered his charge to the jury. His attention was then directed to certain portions of it by the requests above referred to, which he refused, as stated.

The bill of lading having been, even under the circumstances stated, put in evidence in the cause, there would have been error in the refusal of his honor to charge the jury upon the matters pointed out and indicated by counsel in the requests referred to, if these matters had been pertinent; but there was no hurtful error, because the matters embraced in the requests clearly had no bearing upon the real case before the court—the liability of the railway company for negligence as a carrier during the thirty hours between 5 o'clock p. m. of July 3d and 11 o'clock p. m. of July 4th, as shown *infra*. The matters of exception from liability, under a proper construction, did not refer to or cover such a case; and the same is true as to the risk or

arrival above referred to, under the circumstances set out *infra.*

It now remains to consider whether there should be a reversal for the said errors committed in respect of the matter embraced in the fourth assignment, and in the eleventh, twelfth, and fourteenth requests.

The rule has been laid down by this court (*Olliver* v. *Nashville,* 106 Tenn., 273, 274, 281, 61 S. W., 89; *Jones* v. *Telephone Co.,* 101 Tenn., 443, 47 S. W., 699) that there can be no reversal for error in the charge of the court below where we can clearly see that a correct result was reached by the jury, and that another trial, with a proper charge, could not change that result. The same rule must obtain where evidence was improperly excluded in the court below, if it be perfectly apparent to this court that the result attained was the correct one, that the excluded evidence could not have changed that result, and that, upon a new trial being granted, the jury, on that and on other uncontrovertible propositions of fact appearing in the record, could not fail to reach the same conclusion. To reverse in such a case would be, considering the whole case together, to grant a reversal for an immaterial error, and so to violate that section of the Code which provides that "no judgment, decision or decree of the inferior court shall be reversed in the supreme court, unless for errors which affect the merits of the judgment, decision, or decree complained of." Shannon's Code, sec. 6351.

Now, it is shown, beyond doubt, that the goods

reached Philadelphia at 5 o'clock in the afternoon of
July 3d, too late for notice to the consignee and deliv-
ery on that day; that the next day (July 4th) was a
holiday, on which there could be neither notice nor de-
livery; that from July 3d, at 5 o'clock p. m., till July
4th, at 11 o'clock p. m., a period of thirty hours, the
goods were left exposed to the hot weather, in the com-
pany's yard, without any additional icing—protected
only by such ice as remained in the bunkers of the car,
left over or remaining from the ice with which the car
was furnished when it started on its trip; that the
amount so left over in the car was insufficient to pre-
serve the goods, in consequence of which they, being
perishable goods, suffered injury and decay; and, fin-
ally, that the company had at hand, in its terminal for
perishable freights, the Quaker City Cold Storage &
Warehouse Company, the means of preventing the in-
jury, if it had chosen to use these means. These facts
show a clear case of negligence on the part of the rail-
road company. Having reached Philadelphia with the
goods on the afternoon of July 3d, too late to give no-
tice and make delivery on that day, and knowing like-
wise that it could not give notice and make delivery on
the next day, because it was a holiday, and, indeed, that
it could not make delivery until the morning of July
5th, and knowing that the weather was very hot, and
that the goods were perishable, and would probably
spoil, unless put in cold storage, and having at hand the
means of so putting them in cold storage and preserv-

ing them, it was the duty of the company to so care for and preserve them. The failure to do so resulting in injury to the goods, the carrier is liable therefor.

The judgment of the court below must therefore, notwithstanding the errors mentioned, be affirmed, with costs.