# SAHLIEN *v.* BANK.

## (*Jackson.* May 2, 1891.)

1. SUPREME COURT. *Essentials to reversal for erroneous admission of evidence.*

   Unless proper exception is interposed and overruled in the lower Court, there will be no reversal in this Court for erroneous admission of evidence. (*Post, pp. 224, 225.* See Powers *v.* McKenzie, *ante, p. 167.*)

2. SAME. *Weight of verdict or Judge's finding.*

   Judgment upon a verdict, or the equivalent finding of the trial Judge, is conclusive in this Court, in civil cases, as regards the facts, if the verdict or finding is consistent with any reasonable inference or conclusion that may be drawn from the evidence. (*Post, p. 228.*)

3. BANKS AND BANKING. *Duties and responsibilities as collecting agents.*

   Banks are held, in their character of collecting agents, to the exercise of ordinary care and diligence in the discharge of their duties. They are not responsible for mere error of judgment, especially when they have been left to act without instructions. (*Post, p. 229.*)

4. SAME. *Same. Negligence a question for the jury.*

   In suit against bank by its customer, for its negligent failure to make a collection, the question as to the bank's negligence is one peculiarly for the jury or for the Court acting as a jury. (*Post, pp. 229, 230.*)

5. SAME. *Same. Burden upon plaintiff to prove negligence.*

   And, in such case, the burden is upon the plaintiff to prove the bank's negligence. (*Post, p. 232.*)

6. SAME. *Same. Evidence of usage admissible upon question of negligence.*

   And, in such case, it is competent, upon the issue as to the bank's negligence, to prove the common usage of the banks of the particular

Sahlien *v.* Bank.

locality, and, if there be no other, then of the defendant bank with regard to like collections; and this usage, if reasonable and lawful, affords very cogent, if not controlling, evidence affecting the question of the bank's negligence. (*Post, pp. 227, 228.*)

Cases cited : Dabney *v.* Campbell, 9 Hum., 680; 1 Peters, 25.

*Question discussed :* Is the common usage of banks in the particular locality, though unknown to customer, absolutely binding upon him as an implied element in the contract of agency where claim is sent without instructions and without inquiry as to usual course of business? The Court intimates an affirmative answer to this question, though not authoritatively deciding it. (*Post, pp. 224–227.*)

7. SAME. *Same. Not liable, though negligent, when.*

A bank, though negligent in the discharge of its duties as collecting agent, is not liable to its customer for the claim placed in its hands, unless it is shown that the claim was collectible by due diligence, and was lost in consequence of the bank's negligence. The burden is upon the plaintiff to show these facts. (*Post, p. 232.*)

Cases cited: Bruce *v.* Baxter, 7 Lea, 477; Collier *v.* Pulliam, 13 Lea, 114–118.

---

FROM SHELBY.

---

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

M. B. TREZEVANT for Sahlien.

C. W. FRAYSER for Bank.

SNODGRASS, J. Webb, Leake & Co., a firm of merchants doing business in Lonoke, Arkansas, was indebted to D. A. Sahlien & Co., of Memphis,

Tenn., to the amount of $210. The latter firm drew at sight on the former for $100 of this indebtedness, making the draft payable to the Bank of Lonoke, and sent it by mail to this bank for collection. The draft and letter were dated December 24, 1889, and were received the next day —Christmas. The letter contained no special instructions in reference to the draft. The bank was merely advised that the draft was sent for collection and return of proceeds.

Sahlien & Co. had not dealt with the bank before, and were ignorant of. its usage, which, in the absence of special instructions, was merely to present such paper and demand payment, and, if payment was promised and expected, to hold for a period not exceeding ten days for payment.

The bank was located about one hundred miles from Memphis, and was the only bank in Lonoke or in the county where it did business. There was regular mail connection between the two points, only four or five hours being required for such purpose.

On the next day after receipt of the draft the bank presented it for payment, and was informed that it would be paid in two or three days. It had before presented such paper of others to Webb, Leake & Co., and received like promise, followed by payment. It therefore held this draft, and took no further steps in relation to it until the fourth of January, when it learned that Webb, Leake & Co. had the night before made an as-

·signment. It then transmitted the draft to Sah-
lien & Co., and notified that firm of non-payment,

It is agreed that Webb, Leake & Co. in good
faith promised and intended payment; that the
bank expected it, and acted in good faith in hold-
ing the draft and for the interest of the drawer.
It is further agreed that the bank knew Webb,
Leake & Co. were indebted, but did not know how
much; and that the assignment was a surprise to
the bank and to all the business-men of Lonoke.
In the meanwhile, after the assignment, but before
the draft and notice of non-payment had been re-
·ceived by Sahlien & Co., this firm had brought
suit by attachment against Webb, Leake & Co.
for the full amount due, which included, of course,
the one hundred dollars drawn for, and that suit
is still pending and undetermined.

In this situation of affairs, on January 23, 1890,
Sahlien & Co. brought this suit against the bank
to recover of it the amount of the draft as dam-
ages for the negligent failure of the bank to col-
lect the draft or return it, and notify plaintiff
.and enable it to protect itself against loss. The
bank contested its liability, and the facts we have
detailed were agreed upon and developed in evi-
dence. On the facts thus agreed and proven the
Circuit Judge decided in favor of defendant.
Plaintiff appealed and assigned errors.

The first assigned is that "the Court erred in
·overruling plaintiff's exceptions to that part of the
·evidence of witness Josephs, showing the particu-

lar usage of the defendant bank in respect to its course with paper receivable for collection."

To this it is sufficient answer to say that there was no exception made to it. There is indorsed on the deposition and between the signature of witness and certificate of the Notary before whom it was taken the following statement, signed by .counsel: "I object to all the foregoing questions, because irrelevant and incompetent, and reserve the right to cross-examine when the answers to the direct interrogatories are received."

"All the foregoing questions" were not irrelevant and incompetent; but if they were, and this form of objection would be sufficient to raise the question of inadmissibility of entire deposition, neither the Clerk nor the Judge was ever asked to rule upon the exception, and no ruling was ever made upon it. In the absence of any action taken by the Judge, there is nothing to which plaintiff can except here; there is nothing for us to review, and it stands as though no exception was ever made, or, having been made, was waived.

The question as to whether this proof of usage of the bank establishing a custom had, or should have had, any probative effect when received without objection, is another question not raised, and one of much speculative interest. On the one hand, it is insisted that a custom, to be binding, must be general—that is, a custom of all banks of the place—and must be uniform. To this it

15—6 P

is answered that such was the custom of *all*, as there was but *one*, and its course was uniform.

It would seem that if a custom could be established by the uniform course of business of several banks in a given locality, it might be done by *one* where there was but one. The great weight of authority is that such a custom of banks, though not known to the party sending paper for collection, is binding upon the sender as a part of the contract of agency to which the sender impliedly assents by selecting the bank as agent without inquiry and without special instructions. *Bank* v. *Triplett*, 1 Peters, 25; Morse on Banks, Vol. I., Sec. 221.

In the Triplett case the usage of the Washington banks to demand payment after the third day of grace on paper where grace was allowable, was upheld and declared binding on party who dealt with the bank in ignorance of this usage; and such is the holding in many other cases not necessary to cite. The doctrine may be assumed to be well established. This Court doubted the wisdom of the doctrine, and refused to *extend* it in a case determined in 1849; and Judge Green, in an able opinion, undertook to show that the case went too far, and said usage of the bank ought not to prevail where it was in opposition to or disregard of a general law, as he thought the usage referred to in the Triplett case was. *Dabney* v. *Campbell*, 9 Hum., 680.

But this case did not undertake to antagonize

the *rule* announced in the other, and is not an authority denying the *principle* of that case. It has not been since denied in our Court; and may, indeed, be treated as settled here, with the modification that such usage cannot prevail against the general law.

In the case before us, the custom of the Bank of Lonoke is not in contravention of any general law; for there is no statute and no concensus of judicial opinion that determines what precise action the agent shall take after demand, or the precise time he shall be allowed to hold the draft under circumstances like these, or in which he must notify his principal that it was not paid on demand, though promised, as there is in case of notice to indorsers and others only conditionally bound on negotiable paper; and were the question of the validity of this custom fairly presented in the assignment of errors, it might well be upheld.

But a kindred question arises on the issue of negligence. Defendant insists that, whether one bank, under the circumstances, can or not make a custom, binding as such, as a part of all contracts made with it, yet when a distant party selects such bank as its agent for collection, and gives no special instructions, he is bound, on well-settled principles of the law of agency, by implied assent, to the method which such agent employs, according to the agent's usual course of business in like cases, unless that custom was unlawful or unrea-

sonable. And such is the law. Morse on Banks, Vol. I., Sec. 220.

The usage was therefore admissible in evidence. Mr. Morse states the rule to be that "usage often affects parties between whom there is no contract by determining the question of negligence." 1 Morse on Banks, Sec. 9, p. 26.

The bank was entitled to show that it took the same course with respect to plaintiff's claim that it had done with all others under like circumstances. Of course, if its custom was negligence *per se*, it would not protect it; but, as before shown, it cannot be held to be so.

Finally, however, the custom and the act in this case being the same, it is reduced to a question of fact whether the course pursued by the bank in the particular case was or not negligence, as it always is in cases not falling within fixed rules of law and depending on whether or not the course pursued was reasonable.

The question, then, upon all the facts, was one to be determined by the Circuit Judge, who tried the issue in place of a jury. He has found it in favor of defendant on evidence from which that conclusion might have been properly reached, and his finding is conclusive here.

It is well settled that where different persons might draw different conclusions from the same facts, the whole matter, including inferences to be drawn, should be left to the jury, and of course to the Judge when he tries the issue of fact in-

stead of a jury. 2 Thompson on Trials, Secs. 1665, 1666.

This was peculiarly a case in which the question of negligence should have been left to such determination. It has been said that an agent is liable to suit for deviation from a custom which one who deals with him is presumed to contract to have followed. Morse on B. & B., Vol. I., Sec. 221.

In opposition to the view that it was negligence to retain the draft, it might very well be said that it would have been negligence to return it contrary to the custom of the bank, and if it had been returned and afterward Webb, Leake & Co. had attempted to pay it to the bank and not found it there as expected, and the debt had been in consequence lost, negligence might have been predicated of its return. Whether, therefore, the course taken by the bank was or not negligence was a question of fact proper for the decision of the Judge.

A bank contracts to use diligence in collections; but it is bound only to reasonable care and diligence in the discharge of its assumed duties. In a case of doubt, its best judgment is all the principal has the right to require; especially if the doubt arises by reason of the neglect of the principal to give specific instructions, the bank will be acquitted, even if it exercised its discretion erroneously. Morse on Banks, Vol. I, Sec. 218.

The second error assigned is as follows:

"The Court erred in refusing to hold the defendant liable because the agreed facts show the defendant is engaged in a banking business at Lonoke, one hundred miles from Memphis and within four or five hours of mail. As such bank, it offers to collect commercial paper for the public. In such cases it assumes to act with diligence. It received plaintiff's draft December 25, payable at sight, and presented it next day. The draft was not paid, and the bank did not advise plaintiff of the non-payment until January 4, after the drawee became insolvent. During the interval the drawee was a going concern, but no further effort to collect is shown by the bank. This is negligence independently of the omission of the notice, for the consequences of which the defendant is liable. The consequence was that plaintiff had no opportunity to protect itself as it would have had had it been seasonably advised of non-payment, and this opportunity it was entitled to."

In substance and effect, this assignment is that the judgment is against the evidence; but in stating the evidence the assignment makes two assumptions of fact, as settled by the evidence, which are not admitted—first, that defendant held the draft until after the drawee firm became insolvent; and, second, that the firm was a "going concern" from the date of reception of the draft until its assignment.

Perhaps it would make no difference did the fact that the firm continued active business from

December 26 to January 3 appear in evidence, but it does not appear. Nothing is agreed or proven to that effect. It may be no violent inference from other facts proven and from the omission to show that it suspended business earlier than the third; but if it were material, as we shall presently see, it could not be left to inference not inevitable, because the onus of showing the facts upon which solvency is established is upon plaintiff.

The assumption that the drawee was solvent is predicated upon this assumption that it was a "going concern," and that every man or "going concern" is presumed to be solvent, nothing else appearing.

We do not assent to the proposition (though in the multitude of cases it can be found so decided) that every man or "going concern" is presumed to be solvent, nothing else appearing. But in this case something else does appear: indebtedness to an indefinite amount, lack of money on hand to pay when presented this small draft for a part of the debt of one creditor, and necessity of assignment within ten days thereafter. These were facts sufficient to rebut any presumption of solvency had one existed, and to justify the finding of the Circuit Judge that the drawee was not a solvent firm, or, what is only necessary to be assumed to have been adjudged by him, that it was not shown by plaintiff that the firm was solvent by any facts overcoming the indications of insolvency which these afford.

The onus was upon the plaintiff to show negligence of defendant and loss resulting to itself in consequence. Having selected an agent for collecting its claim, which it seeks to hold liable for non-collection, it must show that the claim was good and collectible. *Bruce* v. *Baxter*, 7 Lea, 477; *Collier* v. *Pulliam*, 13 Lea, 114–118.

Mr. Benjamin, in his work on Sales, says: "By the word insolvency is meant a general inability to pay one's debts, and of this inability the *failure* to pay one's just and admitted debts would probably be sufficient evidence." Vol. II., Sec. 1243 (4th Am. Ed.).

Tested by this rule, the *failure* to pay the small draft drawn, followed by an assignment so soon after, the condition of Webb, Leake & Co. might have been determined to be one of insolvency when the draft was presented. But it is not necessary to assume that the Court so decided in adjudging in defendant's favor. It is sufficient to assume that he did not find it to be affirmatively established that the firm was solvent.

It has been distinctly decided in one of the cases already cited in this State that, even where part of a claim sent to an agent for collection has been collected, to charge the agent with the remainder the principal must show that such remainder was collectible. 7 Lea, 482.

It is proper to consider a little more in detail so much of the assignment quoted as relates to the liability of defendant because it did not sea-

sonably advise plaintiff of the non-payment of the draft, and thus give plaintiff an opportunity to protect itself.

In this connection it is argued that the draft should have been at once returned with notice of non-payment, and it is assumed that plaintiff was prejudiced by retention of the one and failure to give the other.

So far as the retention of the draft is concerned, that did not, in fact, affect plaintiff's right, or delay its action; for the proof is that plaintiff did actually sue Webb, Leake & Co. before it got the draft back, or had been advised by defendant that it had not been paid.

As to the notice, it is true that a principal is entitled to notice from his collecting agent of what steps he has taken; and if the agent negligently fail to disclose to his principal that payment is not made or is refused, and by reason of this negligence loss results, the agent is bound.

It must be borne in mind that we are not now considering a case in which, in order to bind an indorser or other party to the instrument, notice is an essential, and must be given in a fixed time. Notice in this case was not necessary to bind any one, and therefore, of course, there was not necessarily any certain time in which it must have been given. Nor was the bank liable for failure to give it without more. Morse on Banks, Vol. I., Sec. 227.

In such case the failure only becomes important

if, in consequence of it, loss results; and then the question is one of reasonableness or unreasonableness of the agent's action, in view of all the circumstances. Whether the delay in giving notice was or not reasonable becomes an issue of fact.

Now, we have already furnished the answer to the proposition thus stated, as applied here, by showing that whether the agent's conduct was or not negligent was a question of fact left to the Judge, and decided by him against plaintiff's contention; and, second, that plaintiff had not shown that he sustained any loss by reason of defendant's action—negligent or not.

The third assignment is, that "the Court erred in refusing to adjudge plaintiff entitled to damages."

This is based upon propositions already considered, that defendant was negligent, the drawee presumed to be solvent, and hence loss established by presumption in the absence of contrary evidence. It, therefore, need not be further noticed.

The judgment is correct, and is affirmed with cost.