[No. 8956.  Department Two.  April 10, 1911.]

MORRIS-MILLER COMPANY, *Respondent*, v. A. VON
PRESSENTIN, *Appellant*.[1]

BANKS AND BANKING—CHECKS—DEPOSIT FOR COLLECTION—TITLE. A customer's indorsement of a check without restriction, and its deposit with credit subject to check, does not pass the title to the bank, where there was an understanding and custom that the bank was to receive it for collection and charge it back to the customer if dishonored.

BANKS AND BANKING—DEPOSITS—PAROL EVIDENCE OF CONDITIONS—COMPETENCY. Evidence is competent to show that the delivery and indorsement of a check to a bank by a depositor, without restriction, is in fact conditional, and for the purpose of collection without passing title, under Rem. & Bal. Code, § 3407, so providing as to the delivery of an indorsed instrument which has not come into the hands of a holder in due course.

BANKS AND BANKING—CHECKS—FAILURE TO COLLECT—NEGLIGENCE—NOTICE TO DRAWER. Where a depositor was put upon notice of the failing condition of his bank, was reducing his deposits, and knew that it could not obtain funds to meet its obligations, he is not injured by, and cannot complain of, negligence in the failure to notify him of nonpayment of a check which he had drawn and sent to another city, whereby several days would elapse before any steps could be taken to collect the check, during which time he learned of the dishonor at a time when the bank had sufficient cash to pay it, but made no attempt to protect himself either by insisting upon payment of the check or withdrawing the deposit, and the bank was insolvent.

SAME—EVIDENCE OF NEGLIGENCE—BURDEN OF PROOF. In an action by the drawer of a check to charge the payee with negligence in failing to collect it, the burden is upon the plaintiff to prove that the drawee was solvent and the claim good and collectible.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered January 28, 1910, upon findings in favor of the plaintiff, upon withdrawing the case from the consideration of the jury, in an action on contract.  Affirmed.

*Million, Houser & Shrauger*, for appellant.

*Coleman & Fogarty*, for respondent.

[1]Reported in 114 Pac. 912.

CROW, J.—On November 4, 1907, the defendant, A. Von Pressentin, of Skagit county, being indebted to plaintiff, Morris-Miller Company, a corporation, of Tacoma, delivered to plaintiff his check for $343.18, drawn on the private bank of A. W. Schafer & Company, at Hamilton, Washington. Respondent indorsed the check, "Pay to order of Pacific National Bank, Morris-Miller Company, C. L. Morris," deposited it with the Pacific National Bank of Tacoma, and received credit therefor, subject to check, with the understanding that the bank was to receive it for collection and charge it back to respondent if dishonored. The Pacific National Bank promptly forwarded the check for collection to A. W. Schafer & Company, drawee, the only bank at Hamilton. The check could not reach Hamilton and be presented for payment until November 6, 1907. The defendant had sufficient funds on deposit with A. W. Schafer & Company to meet the check, but that bank, instead of honoring the check, laid it aside until November 15, 1907, when a receiver took charge of A. W. Schafer & Company, found the dishonored check, returned it through the Pacific National Bank to plaintiff, who transmitted it to defendant. Upon defendant's refusal to make other payment, plaintiff commenced this action, not upon the check, but to recover defendant's original indebtedness. The defendant pleaded payment, and negligence of the Pacific National Bank in failing to exercise diligence in collecting the check. From a judgment in plaintiff's favor, the defendant has appealed.

At the close of respondent's evidence, appellant moved for a nonsuit, contending that the Pacific National Bank of Tacoma was owner of the check, that the dispute was between it and appellant, and that respondent was not the proper party plaintiff. This motion was denied, and at the close of all the evidence, respondent's motion for judgment was granted. Appellant contends the trial court erred in refusing the nonsuit, and in entering judgment for respondent. There is no serious dispute as to the facts. After the Pacific National Bank

transmitted the check to A. W. Schafer & Company, and had received no report, it promptly followed the check with a tracer or letter of inquiry, but heard nothing further until the receiver was appointed. From November 4, 1907, the day the check was issued, until the appointment of the receiver, A. W. Schafer & Company had, at the close of each day's business, available cash as follows: November 4, $559.47; November 5, $518.87; November 6, $448.83; November 7, $392.63; November 8, $321.58; November 9, $151.87; November 11, $208.02; November 12, $466; November 13, $571.95; and November 15, $634.58. Other obligations of the bank were past due and unpaid.

On November 15, 1907, A. Von Pressentin, the appellant herein, as plaintiff, commenced an action in the superior court of Skagit county, wherein A. W. Schafer, doing business as A. W. Schafer & Company, was defendant, and in that action the receiver was forthwith appointed upon his application. A. W. Schafer & Company was a private bank, owned and conducted by A. W. Schafer. Appellant in his complaint, seeking the appointment of a receiver, alleged that as a depositor he was a creditor of the bank to the extent of $1,000. Other allegations of his complaint show the bank was insolvent, and that appellant, before demanding a receiver, knew the bank was dishonoring, and unable to pay, checks drawn by its depositors. Appellant testified that, before he applied for the receiver, he was informed that his check issued to respondent was at the bank unpaid and dishonored. On learning this fact, he made no effort to save himself, although the bank then had more available cash than it had at any other date after the check was issued. No evidence was offered to show, that at any time after appellant's check was given to respondent the bank was solvent; that it was paying checks of depositors; that it was doing a general banking business, although it remained open; or that it was able to pay checks actually drawn by its depositors when the same were presented. The respondent

offered evidence that other checks of its depositors had been presented to the bank and dishonored, but upon appellant's objection, the most of this evidence was excluded.

Appellant insists that the Pacific National Bank owned the check at all times after it was indorsed and deposited by respondent.    There is much conflict of authority on this question, but in consideration of the usual business methods prevailing between respondent and the Pacific National Bank, their understanding that the check was deposited for collection only, although indorsed without restriction, and their agreement that, if dishonored, it was to be charged back and returned to respondent, all shown by the evidence, we conclude that the Pacific National Bank never became its owner.    In pursuance of this custom, understanding, and agreement, the dishonored check was actually charged back, returned to, and accepted by, respondent without objection. Although there was no restriction in the form of the indorsement, the undisputed evidence shows that, as between the Pacific National Bank and respondent, the indorsement was in fact a restrictive and conditional one.    Such evidence was competent.    Section 3407, Rem. & Bal. Code, the same being § 16 of the negotiable instruments act of 1899, provides that delivery of an indorsed instrument, which has not come into the hands of a holder in due course, may be shown to have been conditional, for a special purpose only, and not made to transfer property in the instrument.

"Checks deposited and credited as cash do not become the property of the bank, so that it takes the risk upon itself even though the depositor has been allowed to check against the deposit before the paper is collected, and the depositor can recover the check or other paper, if it is still in the possession of the depositor.    When a depositor deposits a check *on another bank*, without any special contract, the property remains in him, and the bank is his agent until it has notice that the correspondent bank has received the money and credited it.    If the deposit is made and credited to cover an overdraft, or is drawn upon, the bank can hold the paper

until the account is squared, but the property is in the custo-
mer. It is said that indorsement of the check to the bank,
and credit on the books of the bank and on the pass-book, are
evidence of a contract by which the bank shall become owner
of the paper; but (1) banks always claim and *exercise the
right of charging to the depositor all such checks returned
unpaid, which is not consistent with the theory of an under-
standing that title passes absolutely.* (2) The practice of
allowing depositors to check against such .paper is reckoned
by the ablest text-writers as · a mere gratuitous privilege."
2 Morse, Banks & Banking (4th ed.), § 586. See, also, 5
Cyc. 493, and cases cited.

"Neither the deposit of a check with a bank for collection,
nor the entry on its books of the amount of the check as a
deposit of money in favor of the owner of the check, nor yet
the negligence of such bank in and about the collection of
the check from the drawee bank whereby there is a failure to
collect it, nor all these facts combined, makes such check the
property of the collecting bank, nor the owner of the check
a depositor of the money entered to his credit, in such sense
as gives him a right of action for money had and received, or
otherwise, for the amount of the face of the check as money
due him from the bank. A bank which receives a check for
collection and enters the face value of it as a deposit credit
to its owner, becomes the agent of the owner to collect it. If
the collection is made, the relation of depositor and banker is
consummated. If the collection is not made, the bank's right
to charge off the deposit arises." *Jefferson County Sav.
Bank v. Hendrix,* 147 Ala. 670, 39 South. 295, 1 L. R. A.
(N. S.) 246, 250.

Appellant further contends that the respondent, through
the Pacific National Bank, its collection agent, was negligent
(1) in sending the check directly to the bank of A. W. Schafer
& Company for collection, thereby constituting the drawee an
agent to collect from itself, and (2) in failing to promptly
notify appellant that the check had not been paid upon pre-
sentation to the drawee. The undisputed evidence shows that
the bank of A. W. Schafer & Company was the only bank in
Hamilton, and that when a bank receives for collection a check
or draft on the only bank doing business in another city, as

in this case, it is the universal custom of banks in this state to send the paper directly to the drawee for collection and remittance. There is some question whether a compliance with this custom will excuse the forwarding bank from the charge of negligence. The doctrine that the drawee is not a proper agent to be chosen by a forwarding bank to collect a check or draft from itself is sustained by numerous authorities which may be found in foot note 82, 5 Cyc. 507. The text of Cyc. at the same page further states:

"But some states which deny the legality of the rule permit the paper to be sent to the drawee when there is no other bank in the place known by the owner and collection by a different method would be costly and inconvenient."

In support of this announcement, several citations are made in foot note 83. The cases cited, and others of the same tenor, are reviewed at length by the supreme court of Tennessee, in *Winchester Milling Co. v. Bank of Winchester*, 120 Tenn. 225, 111 S. W. 248, 18 L. R. A. (N. S.) 441, and the conclusion of Niel, J., who writes the opinion, is that they do not support the text.

For the purposes of this case, we will assume, without deciding, that the custom of banks pleaded and proven by the respondent, will not excuse it and the Pacific National Bank from the charge of negligence in sending the check directly to the drawee for collection and remittance, and further assume that the failure of respondent and its agent to promptly notify appellant that the check was not paid on presentation was also negligence. Yet we conclude the appellant has not shown that such negligence resulted in any loss or damage to him. Negligence of respondent or the Pacific National Bank can be of no avail to appellant, unless it caused him loss which he would not otherwise have sustained. In other words, if the bank of A. W. Schafer & Company was insolvent when the check was given, and if prompt notice to appellant of the dishonor of the check would not have enabled him to protect himself by causing the check to be paid, or

withdrawing his deposit from the bank, he has sustained no damages as the result of such negligence. He admits that the check did not necessarily constitute payment of his debt, and relies solely upon negligence of the respondent and its agent, the Pacific National Bank, to relieve himself from liability. Assume that the Pacific National Bank had sent the check to some other agency, such as an express company in the town of Hamilton, for collection from A. W. Schafer & Company. Payment could not have been demanded prior to banking hours on November 6, 1907. Had the check been then returned through the bank and respondent, appellant could not have received it in due course of mail prior to November 8, 1907. On that date the bank did not have sufficient funds to pay the check. Appellant, as shown by the allegations of his complaint filed in the receiver action, actually learned, on or before November 15, 1907, that A. W. Schafer & Company was dishonoring checks of its depositors, and had actually neglected to pay this particular check on presentation and demand. At that time the bank had more available funds that it had on any other day after the check was issued. Appellant then made no attempt to protect himself, either by insisting upon payment of the check or by attempting to withdraw his deposit. Nor does it appear that he could have succeeded in doing so at any time after November 4, 1907. The circumstances indicate the contrary. According to his own evidence, he and other interested parties, then being in Sedro Woolley, in Skagit county, telephoned to Hamilton for Mr. Schafer, who went to Sedro-Woolley, and after a conference there held, they proceeded to Mount Vernon, the county seat, when appellant filed a complaint showing the insolvency of the bank, and demanding a receiver. On the trial of this action appellant, referring to the time when his complaint in the receiver action was presented to the superior court, testified as follows:

"When he [Mr. Schafer] came down, they drew up this complaint and I signed it, and I brought it in before the court,

and the judge said at the time he would be very slow to put any bank in the hands of a receiver unless there was good grounds shown; and I said that 'This is no matter of animosity,' and I said, 'I will withdraw the complaint if Mr. Schafer would say so,' and I told Mr. Schafer I would give him five thousand dollars in cash to tide him over, and he said it wouldn't tide him over, that the bank had to go."

He nevertheless contends that he theretofore knew nothing about the actual condition of the bank. Other circumstances disclosed by the record seem to negative this statement, and were sufficient to have put him upon notice. For some time prior thereto he had been reducing his deposits, and knew the bank could not obtain funds to meet its obligations. Yet under these circumstances, instead of withdrawing all of his deposit, he sent his check to respondent at Tacoma, knowing that in due course of mail several days would necessarily elapse before it could be presented to the drawee bank for payment. There is no evidence in the record upon which a finding that appellant suffered any damage or loss whatever by reason of any alleged negligence of the respondent or its agent, the Pacific National Bank, can be intelligently predicated. In *Sahlien v. Bank of Lonoke*, 90 Tenn. 221, 232, 16 S. W. 373, it is held that the neglect of a collecting bank to notify a drawer of the nonpayment of a draft for ten days after its receipt for collection, is not sufficient to impose a liability for the amount of the draft, where the evidence tends to show that the drawee was insolvent at the time the draft was received; and that the burden is upon the plaintiff in such a case to show that the claim was good and collectible. In this action it devolved upon appellant to show that some actual loss had resulted to him from the alleged negligence of the respondent and the Pacific National Bank, its agent. But he has made no such showing. He therefore failed to maintain his affirmative defense.

The judgment is affirmed.

Morris, J., concurs.

CHADWICK, J. (concurring)—The Pacific National Bank was not negligent in sending the check to the drawee, it being the only bank in Hamilton. I therefore concur on the first ground discussed by Judge Crow.