## MASON v. HAMILTON NAT. BANK.

Eastern Section. July 25, 1925.

Certiorari denied by Supreme Court October 10, 1925.

1. **Banks and Banking. Bank not liable for negligence in surrendering note unless its action causes loss and burden is on complainant to show loss.**
In an action against a bank with which note was deposited for collection, for negligence in returning note to maker upon receipt of check which was afterward dishonored, complainant cannot recover, unless it appears that loss resulted by reason of negligence, and the burden is on him to show that a changed situation of maker's financial ability entailing loss had occurred.

2. **Banks and Banking. Bank not liable for negligence in making collection, where evidence shows no loss.**
A bank is not liable to complainant for negligence in suffering note to be surrendered to maker, on receipt of check or in failing to collect such check, where evidence shows that if note or check were ever collectible, they were still susceptible of collection.

3. **Banks and Banking. Bill for recovery because of bank's negligence in making collection held to raise issue of defendant's liability as debtor.**
Allegations of bill to recover for bank's negligence in failing to collect note and maker's check given in payment thereof and prayer for general relief, held to raise issue of defendant's liability as complainant's debtor, notwithstanding liability was mainly predicated on negligence.

4. **Banks and Banking. Bank, accepting check in payment of note, becomes debtor of payee, and latter is not estopped by subsequent conduct not prejudicial to bank.**
Where a bank, holding note for collection, received maker's check, credited same to complainant's account, marked the note paid, and transmitted same to maker, with intention of satisfying note, and under circumstances did satisfy note, the bank's rights and liabilities were those of debtor to complainant, despite fact that complainant may have regarded bank as his agent, and his subsequent conduct in permitting credit to be charged back to his account and in attempting to assist bank in collection of check, and his failure to bring suit against bank, would not operate as an estoppel where not resulting in any prejudice to right of bank.

5. **Banks and banking. Bank accepting paper for collection must return the actual paper or the money.**
A bank receiving a note for collection must return the note or the money and it has no right to accept anything other than money in payment without special authority.

6. **Banks and banking. Estoppel. Complainant held estopped by conduct to claim that bank's receipt or check in payment of note created relation of debtor and creditor.**

Where complainant deposited note with bank for collection, and bank, on receipt of check from maker credited check to complainant's account, returned check to maker and on dishonor of check, charged same back to complainant, claiming to have received same for collection only, in which claim complainant apparently acquiesced by endeavoring to collect check himself by taking possession of it and permitting it to be incumbered by lien of his attorney, held complainant was estopped to claim that receipt of check in payment of note created relation of debtor and creditor between him and bank.

7. **Estoppel. Object of equitable estoppel is to prevent unconscientious and inequitable assertion of rights.**

The object of equitable estoppel is to prevent unconscientious and inequitable assertion or enforcement of claims or rights existing or enforceable by other rules of law.

Appeal from Chancery Court, Hamilton County; Hon. W. B. Garvin, Chancellor.

Affirmed.

Allison and Dineen, of Chattanooga, for Mason.

Cantrell, Meacham and Moon, of Chattanooga, for Hamilton Nat. Bank.

SNODGRASS, J.  The complainant having appealed from a judgment below dismissing his bill, the parties will be referred to here as complainant and defendant.

The bill was filed in the chancery court of Hamilton county to collect from the defendant the proceeds of a note, which the bill alleges was lost to complainant by reason of the negligence of the defendant in receiving from the maker of the note a check from the Consolidated Drug Company which was afterwards dishonored, and defendant in the meantime having credited his account with such proceeds and mailed the note to the makers marked paid. After the dishonor of said check and a second attempt to collect it, defendant charged it back to complainant's account.

The chancellor dismissed the bill, from which complainant appealed, and now says:

"The chancellor erred in holding that complainant was not entitled to recover the amount lost by the negligence of the defendant in collecting the said note, namely $2,088, together with protest fees, $2, and interest, and in dismissing complainant's bill."

The facts are, as shown by the proof, that the complainant was the owner of a note signed by F. J. Kaiser and C. H. Kerns, in the sum of $2,000; that he placed this note for collection in the hands of the defendant bank, with whom he was doing business and seems to have had a considerable deposit.

Kaiser and Kerns were residents of Columbus, Ohio, and owned and controlled the Consolidated Drug Company up and until the first of the year 1922, when Kaiser retired and Kerns became the owner.

The complainant had been in the employ of the Consolidated Drug Company and in April following the delivery of the note for collection quit their employ. The note was dated June 26, 1921, and was placed in the hands of defendant bank August 1, 1921.

After some one or two notices, on February 11, 1922, the bank received a check of the Consolidated Drug Company for the amount of $2,088, in payment of the note and interest, and marked the note paid and sent it to the original makers, and notified the complainant of the transaction in a letter to him signed by the vice president, Mr. Lowery, as follows:

"Chattanooga, Tenn., Feb. 11, 1922.

"Mr. A. M. Mason, 2050 South High St., Columbus, Ohio.—My Dear Mr. Mason: I am pleased to advise you that we have just received remittance from C. H. Kerns, $2,088, in payment of a note of his and F. J. Kaiser in your favor dated June 28, 1921, the principal of which was $2,000, and the accrued interest to date $88.00 This amount has been credited to your account in our savings department.

"Yours very truly,

"J. B. Lowery, Vice President."

Mr. Lowery then sent the check to a correspondent in Cincinnati. This check was dishonored when presented for payment, and on February 15th complainant was notified. Kerns directed the bank to return the check, stating that it would be paid. The bank forwarded it a second time, and again it was dishonored. The bank thereupon, on March 22, 1922, charged the amount of this check back to the account of complainant and had the entry of the charge made in complainant's pass book, without any objection, and complainant began, with the assistance of the bank, to try to collect the note, which, marked paid, was in the hands of Mr. Kerns. Complainant had seen it in the hands of Kerns marked paid. This was at a time when he thought it had been paid.

On February 20, 1922, upon receipt of notice by defendant that the check in payment of the note had not been paid, the complainant writes defendant from Columbus, Ohio, as follows:

"Your favor of the 15th inst. advising me that Mr. Kerns' check for $2,088 in payment of his note and interest due me had not been paid in Columbus has been received. Mr. Kerns was out of the city at that time, but I took the matter up with his secretary at once and he informed me that the check had been made good. If, however, it has not been paid, kindly ad-

vise me at once and I will get behind him again. Thanking you for your kindness in this matter, I am,

"Your friend,
A. M. Mason."

On March 4th he again writes defendant, in response to a telegram, as follows:

"J. B. Lowery, Chattanooga, Tenn.,

Dear Sir: Your wire received to-day and very much appreciated. I shall do my best to collect that money. I doubt that I could force a collection. Mr. Kerns is in Florida at present, but is due here next Tuesday. I think I shall wait until he returns, and if I fail to get a satisfactory settlement with him I shall proceed against him by law at once. Thanking you for your kindness in this matter, I am,

"Yours truly,
A. M. Mason."

Again on March 12, 1922, he writes Mr. Lowery from Columbus, in response to one received by him from Mr. Lowery dated the 8th, as follows:

"Yours of the 8th received. Thanks for your offer to help me in the matter of collecting money due me from Mr. Kerns. He went over to Dayton last Thursday. He told me he would wire the money to you from there to satisfy the note. When he returned he told me that he failed to get the money, but would get it in a few days and pay off the note. Also said he wired you to that effect. Did he do so? I am losing confidence in him  I think best to wait a while longer on him before proceeding against him by law, but will not wait very long.

"It is a criminal offense in this state to give a check with no funds in bank. His trouble with the government is not serious. I think he will get out of that all right. It is not as bad as the papers report it. If it is not troubling you too much I would like for you to write Kerns & Kaiser both occasionally. It does good. I intend to keep behind them continually, but at the same time I am uneasy on account of it. Thanking you for your kindness in this matter, I am,

"Yours truly,
A. M. Mason."

Taking up this cue, defendant, through Mr. Lowery, on March 18th writes a letter to the parties, and informs the complainant of this letter as follows:

"Acting on your suggestion I have to-day written Mr. Frank J. Kaiser and inclosed copy of same to Mr. C. H. Kerns; this with regard to the check of the Consolidated Drug Company that was sent us in payment of a note of yours, and I hope this

will bring some good results. If you can think of any other way I might assist in the collection of this do not fail to let me know either by wire or by letter. I certainly would dislike to see you lose anything on these gentlemen. The check is still at the Central National Bank, Columbus, for payment. With best wishes I am,

"Yours very truly,
"J. B. F. Lowery, Vice President."

The letter written to Mr. Kaiser, as requested, was as follows:

"Mr. Frank J. Kaiser, 2050 South High Street, Columbus, Ohio.

My Dear Sir: Some time back Mr. C. J. Kerns sent this bank a check of the Consolidated Drug Company for $2,088, on the Central National Bank, your city. This to pay note of Mr. Kerns and yourself in favor of A. M. Mason.

"We promptly forwarded check through our correspondent, and it was returned protested. Later on we had check sent to the Central National Bank of Columbus for collection and remittance, but it has never been paid. We are out of the use of the money, and the note was canceled and returned to Mr. Kerns; therefore we must insist on this check being made good and that without delay. Please let the writer hear from you immediately.

"Yours very truly,
"J. B. Lowery, Vice President."

On March 23, 1922, Mr. Mason replies, expressing appreciation of this letter as follows:

"Mr. J. B. Lowery, Chattanooga, Tenn.

Dear Sir: Your letter to Mr. Kerns, I think, has done some good. He has some money due him and he has promised to pay me out of the first collection. I think best to wait on him awhile longer before proceeding against him by law. I understand it is a criminal offense in this state to give a check with no funds in bank, and it may be that a criminal procedure would bring the money. If he fails to pay in a reasonable length of time I shall write you again for your aid. Thanking you for your kindness in this matter, I am, with best wishes,

"Yours truly,
A. M. Mason."

On May 6th, evidently in reply to one from Mr. Lowery, Mr. Mason writes him again from Columbus as follows:

"Yes; I knew you was on the job in the Kerns matter, which is very nice of you, and is appreciated beyond words. He will make fair promises, but I have learned (too late) that you cannot rely upon anything he says. He is a bad actor. By the way, did

Kerns sign the check sent you, or did Johnson sign it, and have you the check? I am thinking of prosecuting him criminally, and I want to get the facts before I proceed. I don't think he intends to pay the note. I have lost all confidence in him.

"I have resigned my position with the Consolidated Drug Corporation, Am trying to get some from him, but so far have failed. I expect to go to see an attorney next Monday and see what can be done with him. I expect to be home the latter part of next week and will come around and talk the situation over with you. Thanking you for your kindness in this matter, I am,

"Yours very truly,
A. M. Mason."

Whatever may have been the status of the parties affected at the time of the reception of the check, by its credit to the account of the complainant, the marking of the note paid, and its transmission to the makers, thus canceled, the complainant evidently did not think the bank was liable at the time, for he seems to have acquiesced in charging the same back against himself in his own pass-book March 22, 1922, and from that time sought to collect the note from the original parties. The check for some time remained in the possession of the Columbus bank and after May 6th, the date of the letter of inquiry as to how the check was signed, it was turned over to the complainant, with the original indorsement of the defendant bank upon it for collection. Complainant took charge of it for collection and turned it over to his lawyer, Mr. Sawyer, of Cincinnati, we think, on his own account, and, so far as this record shows, Mr. Sawyer is holding the same for such fees as may be due him by reason of his employment.

On the cross-examination of Mr. Lowery, he files certain letters to Sawyer in which he assumes an equivocal position. He says they were simply to enable complainant to recover the check back from Sawyer. These letters are as follows:

"July 7, 1922.

"Mr. Louis B. Sawyer, First National Bank Building, Cincinnati, Ohio.—My dear Sir: Some time back we corresponded with you regarding a claim you were handling for A. M. Mason. As the writer understands it you have in your possession a check in favor of the Hamilton National Bank for $2,088 given by the Consolidated Drug Corporation to cover a note signed by one Kerns & Kaiser. Please forward this check to us without delay, using the inclosed envelope. Your prompt attention to this matter will be appreciated by

"Yours truly,
Vice President."

And again on July 11th:

"Mr. Louis B. Sawyer, First National Bank Bldg., Cincinnati, Ohio.—My dear Sir: Your letter of the 10th has been received, and I note that you do not return to us the check of the Consolidated Drug Company for $2,088, which was given this bank in payment of a note of A. M. Mason. This check belongs to this bank, and I must ask that you promptly return it.

"If you have any claim against Mr. Mason it can be made out of him, as he is perfectly responsible financially.

"I do not understand your idea of holding up this check that was given us in payment of a note, and I must insist on its coming forward promptly.

"Yours very truly,

"Vice President."

And again on July 14th:

"Mr. Louis B. Sawyer, First National Bank Building, Cincinnati, Ohio.—My dear Sir: Please let me have a reply to my letter recently sent you regarding check of the Consolidated Drug Corporation, Columbus, Ohio, given in payment of a note due by C. H. Kerns and Fred J. Kaiser, which note was in favor of A. M. Mason. I want this check back promptly.

"Yours very truly,

"Vice President."

Thus the matter seems to have rested until the bringing of this lawsuit, June 10, 1924.

The complainant does allege in his bill that defendant placed this note in the hands of Sawyer for collection, and that Sawyer failed to collect the check by reason of the fact that the Consolidated Drug Company had gone into bankruptcy. This was denied in the answer, and there is no proof to support it, and no proof to show that the Consolidated Drug Company, whether a copartnership or a corporation, was, or is, insolvent; nor does the proof show that the financial condition of the makers of the note have changed in any way since the making of the note or the issuance of the check by the Consolidated Drug Company.

It thus appears that, if the bank acted as the agent of the complainant in receiving the check, it was negligent in so receiving it; but it does not appear that any loss resulted to the complainant by reason of such negligence, for if the solvency of the Consolidated Drug Company has remained the same, and the financial condition of the makers of the note has not altered (and the proof would be upon the complainant to show that a changed situation of financial ability entailing loss had occurred), then nothing was in the way of complainant having brought suit against any of the parties, the makers of the note, or the drawer of the check, and to have collected

the same. The fact that the note was in the possession of the makers would not have prevented suit thereon, and indeed nothing seems to be still in the way, except complainant did say in his deposition that he doubted whether he could have enforced collection. His explanation of the delay is that he spent some time in prison, and that he just wanted to give plenty of time. There is no proof to show that he has extended the time to the makers of the note, but that they have in a way been promising, and he has been expecting some sort of adjustment, which, up to the bringing of the suit, has not matured, and he has simply neglected to institute suit.

"The burden is on the party suing for the loss or non-collection of commercial paper to prove not only the negligence occasioning the failure to present and collect, but also that the paper was good and. collectable. The onus is on the complainant to show negligence of the defendant and loss resulting to itself in consequence of the failure." People's Savings Bank, etc., Co. v. Bonner, 1 App. Cas., 443, 454; Jefferson County Savings Bank v. John C. Hendrix, 147 Ala., 670, 39 So., 295, 1 L. R. A. (N. S.), 246; H. C. Givan v. Bank of Alexandria and W. B. Eastes (Tenn. Ch.), 52 S. W., 923, 47 L. R. A., 272, 273.

In this latter, a Tennessee case, it was held, on the question of negligence, that the bank had used proper care in the selection of another bank as an intermediary. Judge Neil says:

"For another reason, also, we must hold that the Bank of Alexandria is not liable. This is that the bank of A. Bryan & Co. was insolvent at the time the check was drawn, and it was not at all certain that the check would have been paid even if presented. It certainly was not collectable by law. So, even if the defendant bank had been guilty of negligence no right of action would exist. There must not only be negligence, but injury, as a result of it."

See, also, Bruce v. Baxter, 7 Lea, 481; Sahlien v. Bank, 90 Tenn., 232, 16 S. W., 373.

At any rate complainant received due and proper notice of the dishonoring of the check, and thereafter assumed personal direction of the efforts to collect both it and the note, and has to this good day neglected to sue, and it does not in any way appear from the proof that, if either the note or the check were ever collectable, they are not still collectable, and therefore we do not think the bank is liable upon any ground of negligence alleged.

Is the bank liable to the complainant upon any consideration of the relationship of debtor and creditor? The bill mainly predicates the liability upon the case for negligence, but under its allegations of fact and the prayer for general relief we think the question fairly raised.

The bill charges that on or about December 26, 1921, complainant delivered to the defendant a note signed by F. J. Kaiser and C. H. Kerns, dated June 28, 1921, and due six months after date, for the sum of $2,000, payable to complainant and bearing interest at seven per cent. This note was delivered to the defendant and accepted by it for collection, and defendant undertook to collect same, and could have collected it by the exercise of due diligence.

Thereupon, it is alleged:

"Defendant mailed to the makers of said note at Columbus, Ohio, a notice stating that it had said note for collection; that same was due and payable, and requesting said makers to remit to it the principal and interest on said note, amounting to $2,-088.

"In obedience to this notice the makers of said note mailed to the defendant a check drawn on the Central National Bank of Columbus, Ohio, and signed by Consolidated Drug Company, of Columbus, Ohio, which drug company was either a corporation or a partnership owned or controlled by the makers of the said note. The defendant accepted said check in payment of said note, marked the note, 'Paid,' and surrendered it to the members without exercising any care or prudence in ascertaining whether or not the check was good, and immediately credited to complainant's account at said bank the proceeds of said check."

The defendant while admitting the reception of the note for collection, that it received the check of the Consolidated Drug Company in payment of the note, that it marked the note, "Paid," and transmitted same to the makers, insists that it did all this as the agents of the complainant; that the crediting of the account of the complainant with the proceeds of the check was conditional upon the payment of the check; and that upon the dishonor of the check it had the right to do so and did charge the same against such account, and, with respect to this check, no relation of debtor and creditor existed by these transactions, and that besides the complainant in any event has ratified what was done and estopped himself from now asserting any liability against the defendant for money had and received.

If the action of the defendant in receiving and crediting the check, marking the note paid, and transmitting the same to the makers, was intended to satisfy the note, and under the circumstances did so satisfy the note, then this action fixed the status of the parties as debtor and creditor, no matter how the complainant may have regarded it; and, if complainant's subsequent dealing in the matter has worked no change injuriously affecting the defendant, it is difficult to see how any estoppel could be effected. If the bank was liable, it could make no difference that the complainant thought it was not

liable. If the complainant permitted without objection the entry of this charge in the passbook, he would not be bound by it, unless it had been done upon some sort of consideration, or influenced some action of the bank to its detriment. His efforts thereafter with the assistance of the bank to induce the makers to pay the note, or take care of the check, which would have resulted, if successful, to the advantage of the bank, is no reason why the complainant should be estopped from asserting a valid claim against the bank. Mere neglect to bring suit, unless such neglect with other actions of the complainant has misled the bank into some act or omission that has resulted in injury to the bank, or so changed the situation as that it has lost some right or advantage that it might otherwise have prosecuted successfully, should not work an estoppel.

Complainant has cited numerous cases in his brief establishing the doctrine that if a bank accepts the check of the party bound to make payment, and surrenders the paper, it is responsible to the owner for any resulting loss.

In the case of the Fifth National Bank v. Ashworth, 123 Pa., 218, 16 A., 596, 597, 2 A. L. R., 491, the court said:

"It is safe to say, as a general rule, that when a bank receives a check from one of its depositors for collection, it must return him the check or the money. It is also equally clear that if the collecting bank surrenders the check to the bank upon which it is drawn, and accepts a cashier's check, or other obligation, in lieu thereof, its liability to its depositor is fixed, as much so as if it had received the cash. It has no right, unless specially authorized to do so, to accept anything in lieu of money."

The authorities are numerous upon this subject and need not be further cited.

When coupled with the letter of February 11th notifying complainant that defendant had "just received remittance from Kerns—$2,-088 on the note, and that" this amount has been credited to your account in our savings department, the surrender of the note to the makers marked "paid," and the inability of the bank to return the note to the complainant, had he stood upon these matters, would have entitled him to judgment against the bank as money had and received. But Mr. Lowery says the check was not so received; that the deposit was made upon a slip similar to that filed as Exhibit No. 1 to his deposition, which embodies a contract with the customer of the bank listing checks as subject to collection, and that this check was so intended, notwithstanding the credit. The complainant has lent his assent to this view by permitting it to be so charged back in his passbook, has acted upon it in his endeavor to secure a settlement without resort to the courts, and has had the check turned over to him, which he has permitted evidently to be incumbered by a lien

of his attorney and is unable to restore to the bank, which would be obliged to have the check in order to institute suit on the same against the drawer. This injury at least has been effected the bank, and we think he should therefore be estopped to place any other construction on the contract than that he has acquiesced in for so long a time, to the injury of the bank.

"The object of equitable estoppel is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed, or been enforceable by other rules of law, unless prevented by any estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel." Tenn. Digest, vol. 5, p. 275, citing 2 Pom. Eq., section 802.

The decree of the chancellor is therefore affirmed, with costs against appellant.

Portrum and Thompson, JJ., concur.